NUMBER 13-07-00366-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RICARDO VILLA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Wittig


Memorandum Opinion by Justice Wittig (1)

 

 Ricardo Villa, appellant, appeals his jury conviction of three counts of
aggravated sexual assault of a child. Punishment was assessed at 99 years
imprisonment plus a $5000 fine on each count. Appellant presents three identical
issues alleging erroneous admission of extraneous offenses involving three
witnesses, Jose Ortiz, Juan Cantu, and Felix Moreno, during the trial in chief. He
claims error under rules 403 and 404(b) of the Texas Rules of Evidence. See Tex
R. Evid. 403, 404(b). We affirm.

 1. Background

 The complainant, Jonathon Carrion was twenty-four at the time of trial. Three
instances of sexual assault began when he was 10. Carrion met appellant while
attending dance classes with his cousin, Natalie Barrera, at Villa's studio. Carrion
was then in forth grade. Appellant picked up Carrion from his mother's work and
took him to the Dance Center, where appellant worked and sometimes instructed
Carrion. On one occasion, when no one else was present at the studio, appellant
told the complainant he could watch T.V. Appellant joined him and then laid on top
of Carrion's back, telling him it was good exercise. Appellant instructed Carrion to
massage his inner thigh, which Carrion did. Appellant then asked Carrion to undo
his pants so that he could get closer to the skin. Appellant took off his underwear
in the dark room. Appellant then instructed Carrion to rub appellant's sexual organ
with his hand. Appellant then placed his organ into Carrion's mouth, moving it. 
Afterward, appellant took Carrion to Wendy's and bought him ice cream and a meal. 
 A second incident occurred during a school break between fifth and sixth
grades. This incident was in another room at the dance studio, and began, as did
the first incident, with appellant requesting Carrion to massage his leg. Eventually,
appellant again had Carrion perform oral sex on appellant, until interrupted by a
telephone call. Appellant again treated Carrion at Wendy's.

 Carrion was not alone with appellant again at the studio. In the third incident,
appellant pulled Carrion out of dance class and led him to a bathroom. Again, the
episode began by a request for a massage of the inner thigh. Appellant instructed
Carrion to kneel down and again engaged the boy with oral sex. The child made no
initial out cry, but mentioned the incidences years later after his mother died.

 2. Standard of Review

 The admissibility of evidence is within the discretion of the trial court and will
not be overturned absent an abuse of discretion. Moses v. State, 105 S.W.3d 622,
627 (Tex. Crim. App. 2003). As long as the trial court's ruling was within the zone
of reasonable disagreement, the appellate court should affirm. Id. (citing
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). 
Whether extraneous offense evidence has relevance apart from character
conformity, as required by rule 404(b), is a question for the trial court. Id. An
appellate court owes no less deference to the trial judge in making this decision than
it affords him in making any other relevancy determination. Id. When a trial court
further decides not to exclude the evidence, finding that the probative value of the
evidence is not outweighed by the danger of unfair prejudice, this decision too shall
be given deference. Id. Thus, the court of appeals cannot simply substitute its own
decision for the trial court's. Id. 

 The appellate court should not conduct a de novo review of the record with a
view to making a wholly independent judgment whether the probative value of
evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger
of unfair prejudice. Id. It should reverse the judgment of the trial court "rarely and
only after a clear abuse of discretion." Id. 

 Rule 403 favors admissibility of relevant evidence, and the presumption is that
relevant evidence will be more probative than prejudicial. Montgomery, 810 S.W.2d
at 389. If the trial court determines that evidence of "other crimes, wrongs, or acts"
has relevance apart from character conformity, it should admit the evidence absent
a further objection by the opponent of the evidence. It is then incumbent upon the
defendant, in view of the presumption of admissibility of relevant evidence, to ask the
trial court to exclude the evidence by its authority under rule 403, on the ground that
the probative value of the evidence, assuming it is relevant apart from character
conformity, is nevertheless substantially outweighed by the danger of unfair
prejudice. Id.

 If the trial court's evidentiary ruling is correct on any theory of law applicable
to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for
his correct ruling. De La Paz v. State, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

3. Extraneous Offense Testimony

 Feliz Moreno, 37, testified that in mid 1985, he was at Villa's dance studio and 
told Villa that he wanted to dance. Villa asked Moreno if he wanted to help judge a
dance contest. Moreno was in the eighth grade and stated his age to be 14 or 15. 
Villa invited Moreno to a back room, wore a towel, and requested Moreno to
massage his legs under the towel. Villa then asked Moreno to perform oral sex,
which he did. On a second occasion, Moreno was again asked to massage Villa's
legs in the genital area and again asked to perform oral sex, which Moreno refused. 
Villa masturbated while Moreno massaged Villa. The same thing happened on a
third occasion when Villa's wife came into the room. 

 Juan Cantu, 23, testified he took dance lessons from Villa at the studio when
he was ten years old. Villa took Cantu out of the class into a back room, laid down,
and asked Cantu to massage his upper thighs. Cantu complied. Villa was clothed. 
When Cantu returned home, he told his mother who made a police report. Cantu
did not return to the dance studio.

 Father Jose Angel Ortiz, 37, testified he met Villa when he was 18, although
he looked much younger. Villa met Ortiz at a bus stop. Ortiz indicated he was
looking for a job and Villa invited Ortiz to go with him to see about an office cleaning
job. Villa kept rubbing his inner thigh and talked about a soccer injury. They
eventually parked in a back alley behind a mall. They then went to a back office,
possibly at the dance studio. Villa told Ortiz he had pornographic adult movies, but
not at his office. Villa invited Ortiz over and placed his hand on Villa's inner thighs. 
Villa then invited Ortiz to the floor and Villa took off his pants and Ortiz's pants. Villa
performed oral sex on Ortiz and maneuvered his genitals over Ortiz's face. Ortiz
massaged Villa's sexual organ and placed it in his mouth.

 4. Rule 404(b)

 Appellant contends that the admission of the extraneous offense testimony of
Cantu and Moreno was erroneous and was not relevant to rebut the defensive theory
of fabrication and lack of opportunity or to show plan. Appellant also contends the
extraneous offense testimony of Ortiz was erroneous and not relevant to rebut the
defensive theory of fabrication and lack of opportunity. The State concedes that the
testimony of Cantu and Moreno did not show a plan. Appellant argues that the mere
challenge to credibility of the complainant does not open the door to extraneous
offenses, citing DeLeon v. State, 77 S.W.3d 300, 313 (Tex. App.-Austin 2001, pet.
ref'd.) (impeachment is not among the listed exceptions in rule 404(b); testimony
admitted for impeachment purposes only is without probative value and cannot be
considered as substantial evidence). Similarly, he argues the cross-examination
must be sufficient to construct a defensive theory. See Walker v. State, 588 S.W.2d
920, 922 (Tex. Crim. App. 1979) (cross-examination of State's witnesses can raise
the issue of identity but where cross-examination fails to impeach the witness, or
only one of several witnesses is impeached in his identification, such
cross-examination will not in itself support the introduction of extraneous
transactions on the issue of identity). The cross-examination responses must
undermine the State's testimony and place in controversy a fact that the testimony
was offered to prove. Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988).

 In his cross-examination of the complainant, appellant sought to establish that
the complainant took drugs, drank alcohol to excess, and made untrue statements
about his allegedly abusive step-father. According to the cross-examination, the
complainant told different "stories" about the sexual assaults to his various
counselors. In one episode, where complainant was supposedly picked up at a Wal-Mart and taken to the dance studio of Villa for sex, the store did not exist or was not
yet opened at the time of the assault. Counsel for appellant accused complainant:
"Your story just didn't jibe." The defense developed discrepancies between what the
complainant told investigator Michael Hess and a police report. The defense sought
to establish that the complainant confused his sister's sweet sixteen birthday with her
Quincenera (15th birthday celebration). Ultimately, defense counsel charged the
complainant that the third incident in a "public" bathroom was "just a fabrication on
your part."

 5. Fabrication

 Defense counsel challenged how a ten year old could remember "everything
you remember." Virtually every detail related by the complainant was challenged,
including the fact the lights were out. Defense counsel suggested it would be almost
impossible to do or see anything during the bathroom incident. Counsel suggested,
in effect argued, that with nine other students and nine parents around, the charged
sexual assault was impossible. After the complainant's mother's death, his grades
were bad and he went to counseling. The complainant was also suspended from
school. Defense counsel then argued, i.e. by leading questions suggested, that
complainant's testimony about Villa's sexual advances, were an attempt to generate
sympathy to get better grades. Furthermore, the complainant reported no problems
until the 2005 time frame. Complainant never told his mother or sister about the
episodes. Defense counsel accused the victim of using Villa "as a crutch." Counsel
also charged the complainant tried to get back into school "with these allegations." 
Patently, the Villa defense was charging fabrication.

 Appellant also argues from the intermediate court's holding in Bass, that a
fabrication defensive theory standing alone (without other rule 404(b) purposes) is
insufficient to permit introduction of extraneous offense evidence in rebuttal. Bass
v. State, 222 S.W.3d 571, 578 (Tex.App.-Houston [14th Dist.] 2007), rev'd & rem'd.,
270 S.W.3d 557 (Tex. Crim. App. 2008). The higher court rejected the distinction
drawn by the intermediate court between a "fabrication" defense and a "frame up"
or "retaliation" defense. Bass, 270 S. W. 3rd at 563. "The issue does not
necessarily turn on the type of defense presented, but on whether the
extraneous-offense evidence has noncharacter-conformity relevance by, for
example, rebutting a defensive theory or making less probable defensive evidence
that undermines an elemental fact." Id. (citing Powell v. State, 63 S.W.3d 435, 438
(Tex. Crim. App. 2001)); Montgomery, 810 S.W.2d at 387)).

 Appellant likewise argues from a footnote to an unpublished case cited in
Dennis, that mere cross-examination, without evidence of motive or a reason to lie,
is insufficient to introduce extraneous-offences. See Dennis v. State, 178 S.W.3d
172, 178 n. 1 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd.). The Houston court
noted that the defendant did no more than attempt to impeach the victim's
credibility-he did not argue that the defendant was framed. Id. The noted case held
that the evidence was inadmissible because, "unlike the defendants in the child
sexual assault cases the State cites, appellant never offered a motive or reason for
the victim's purported lie." Id. However, in Dennis, the defense did more than
merely impeach F.S.'s credibility, and thus opened the door to extraneous evidence
of his prior sexual assault of a minor. Id. Likewise, appellant here did more than
attempt to impeach the complainant, suggesting he had a motive to lie to his
counselors in order to regain admission to college, impossibility, and an attempt to
gain sympathy.

 Appellant also cites Bargas v. State, 252 S.W.3d 876, 892 (Tex.
App.-Houston [14th Dist.] 2008, no pet.). There, the defendant offered both a
motive to fabricate the allegations and evidence, i.e. reason to lie, because the
complainant was upset about living with defendant's temper and physical abuse. Id. 
 Like Bargas, the appellant here did more than merely impeach credibility; through
the responses elicited from Carrion and other witnesses during cross-examination,
appellant opened the door to extraneous-offense evidence to rebut appellant's
defensive theories of sympathy and an alleged attempt to regain college admission. 
See id.

 6. Opportunity 

 The defense also argued, through its questioning of several witnesses, lack
of opportunity. Specifically, during the cross-examination of Natilie Barrera, defense
counsel informed the trial court he was arguing "the circumstances wouldn't permit
that to happen. It's just not practical to have happened." Again, during summation,
defense counsel argued he could not believe Carrion went back for a third incident
in a restroom that was pitch black and it was not reasonable that Villa would risk his
entire business and reputation to sexually assault a boy in a public restroom where
someone could walk in on him. (2)

 In Powell, the court of criminal appeals discussed the lack of opportunity as
a means of opening the door to extraneous offenses. Powell, 63 S.W.3d at 439. 
The defense witnesses suggested there was no opportunity for the sexual assault
by Powell. Id. at 436-37. The court of appeals was reversed because it ignored the
lack-of-opportunity defensive theory which was put forth during appellant's
cross-examination of the complainant (in addition to opening statement.) Id. at 439. 
The trial court could have reasonably decided that the extraneous offense evidence
at issue had noncharacter conformity relevance where it rebutted appellant's
defensive theory that he had no opportunity to commit the offense because he was
never alone with the complainant. Id. at 438. "It is at least subject to reasonable
disagreement whether the extraneous offense evidence made this defensive theory
less probable since this evidence shows that appellant molested other girls in the
presence of others." Id. (citing Montgomery, 810 S.W.2d at 387).

 In sum, it is also at least subject to reasonable disagreement whether the
extraneous offense evidence was admissible for the noncharacter conformity
purpose of rebutting appellant's defensive theories that the complainant fabricated
his allegations against him in order for complainant to gain sympathy or to use as a
stratagem to reenter school. See Bass, 270 S.W.3d at 563 (citing Daggett v, State,
187 S.W.3d at 453-54 (Tex. Crim. App. 2005); Powell, 63 S.W.3d at 438)). It is
likewise subject to reasonable disagreement whether the extraneous offense
evidence made these defensive theories less probable. Id. We hold that the trial
court in this case could have reasonably concluded that the inherent probative force
of appellant's extraneous bad acts was considerable, because the evidence tended
to make more probable appellant's illicit sexual advances towards boys and a young
man. State v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The trial
court, therefore, did not abuse its discretion by deciding that the extraneous-offense
evidence was admissible to rebut these defensive theories.

 7. The Doctrine of Chances

 The extraneous offense evidence was also admissible under Wigmore's
"Doctrine of Chances." See 2 JOHN WIGMORE, EVIDENCE § 302, at 241 (Chadbourn
rev. 1979). The "doctrine of chances" tells us that highly unusual events are unlikely
to repeat themselves inadvertently or by happenstance. De La Paz, 279 S.W.3d. at
347. As the court of criminal appeals explains, if A while hunting with B, hears the
bullet from B's gun whistling past his head, he is willing to accept B's bad aim as a
conceivable explanation; but if shortly afterwards the same thing happens again, and
if on the third occasion A receives B's bullet in his body, the immediate inference
(i.e., as a probability, though not a certainty) is that B shot at A deliberately; because
the chances of an inadvertent shooting on three successive similar occasions are
extremely small. Id. Here, Villa used a nearly identical modus of seduction of young
boys for sexual favors in the incidences in question.

 Similarly, the chance that a man innocently collects on his murdered business
partner's insurance policy decreases significantly when it is learned that he collected
on his murdered wife's insurance policy just three years earlier. Id. Modus operandi
may also encompass the "doctrine of chances" theory to show lack of consent,
motive, and the manner of committing an offense. Casey v. State, 215 S.W.3d 870,
881 (Tex. Crim. App. 2007).

 8. Rule 403

 Even if admissible, appellant challenges that the prejudicial effect out-weighs
the probative value of each of the extraneous offense evidence. He cites
Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Appellant
quotes extensively from Gigliobianco:

 The rule's first key phrase, "probative value," means more than simply
relevance. Old Chief v. United States, 519 U.S. 172, 184, 117 S. Ct.
644, 136 L. Ed. 2d 574 (1997) (discussing Federal Rule 403). Rather,
"probative value" refers to the inherent probative force of an item of
evidence-that is, how strongly it serves to make more or less probable
the existence of a fact of consequence to the litigation-coupled with the
proponent's need for that item of evidence. 


Id. To this, we add the court's next sentence, applicable here:


 We explained in Montgomery v. State, 810 S.W.2d 372, 390 (Tex.
Crim. App. 1990) (op. on reh'g), that "[w]hen the proponent [of an item
of evidence] has other compelling or undisputed evidence to establish
the proposition or fact that the [item of evidence] goes to prove, the
[probative value of the item of evidence] will weigh far less than it
otherwise might in the probative-versus-prejudicial balance.


Id. Here, the State had only the complainant's eye-witness testimony to the critical
facts and that evidence was seriously tested by the defense's arguments and
theories of fabrication and lack of opportunity. As the defense pointed out in the
trial, the complainant made no outcry, and didn't tell his mother or his close sister. 
It was not until over a decade later, when in counseling for his mother's death and
suffering bad grades, that complainant came forth with his charges against Villa. 
Understandably, the defense thus accused the complainant of fabrication for
sympathy, to excuse his grades, and to seek readmission to college. Similarly, the
defense claimed that Villa had no opportunity to molest boys in a "public" restroom,
with the door open and lights off. The defense also argued Villa would not risk his
reputation and business for underage sexual exploits. Therefore, the extraneous
offense evidence to counter these defensive theories, (absent other compelling or
undisputed evidence,) helped to prove both the possibility and probability of the
charged offenses.

 A successful conviction "often depends primarily on whether the jury believes
the complainant, turning the trial into a swearing match between the complainant
and defendant." Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). 
Appellant admits Carrion's credibility was the primary issue. At a minimum, the
evidence provided a "small nudge" towards contradicting appellant's defensive
theories and towards proving that the molestation did indeed occur. The testimony
of Ortiz, Cantu and Moreno showed strikingly similar events to the charged event:
the defendant coaxing young boys and one very young-looking youth to rub his inner
thighs, then gradually coax them into intimate sexual acts. Thus, we disagree with
appellant that the State does not get past the probative value factor. 

 Appellant goes on to argue and recite from Gigliobianco:

 In summary, a trial court, when undertaking a Rule 403 analysis, must
balance (1) the inherent probative force of the proffered item of
evidence along with (2) the proponent's need for that evidence against
(3) any tendency of the evidence to suggest decision on an improper
basis, (4) any tendency of the evidence to confuse or distract the jury
from the main issues, (5) any tendency of the evidence to be given
undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation
of the evidence will consume an inordinate amount of time or merely
repeat evidence already admitted. Of course, these factors may well
blend together in practice.


Gigliobianco, 210 S. W. 3rd at 641. He also argues that the extraneous offenses/bad
acts did not directly relate to any fact of consequence, had many dissimilarities, two
were remote in time and were uncorroborated. (3) We have already noted that clearly
an adult having sex with a ten year-old boy is a fact of consequence. The
dissimilarities included the fact that Ortiz was eighteen at the time of his encounter
and there was no teacher/student relationship. Moreno was fifteen and his
encounters were "voluntary" and not submissive. Cantu was only a single incident
which did not involve a sexual act, according to appellant. We do not agree that
when Villa took the ten year old Cantu out of class, just as he did with Carrion, took
him to a dimly lit back room and asked the child to rub his thighs, that there was no
suggestion of sexual conduct or that Villa may not have been grooming Cantu for
further sexual exploitation. Additional sexual advances were averted by Cantu's
prompt report to his mother and her report to police. Villa's advances to Cantu
exactly paralleled his advances on Carrion, also ten, at his dance studio.

 The evidence showed that Ortiz looked much younger than his stated age of
eighteen. Instead of exploiting the young man's interest in dancing, Villa used
Ortiz's desire to work and make some money. The stratagem and enticement
followed the same course of conduct as with Carrion and the other victims. 

 While Moreno was stated to be fourteen or fifteen at the time of his sexual
episodes with Villa, he was only in eighth grade. Moreno too sought Villa's
assistance in dancing. Villa enticed Moreno with an offer to help him judge a dance
contest. This "leading on" conduct was similar to, if not the same as, Villa used to
coax the other boys into sex. He first asked Moreno to massage his thighs under a
towel, then gradually persuaded the boy into further sexual activity. Moreno refused
Villa's invitation to perform oral sex on the second and third occasions; Moreno
stated his interest was to take up Villa's offer to judge a dance contest. This "quid
pro quo" by the minor does not amount to the degree of voluntariness suggested by
appellant.

 First, we observe that evidence of the commission of other crimes by the
accused is admissible as an exception to the general rule to rebut some defensive
theory and, in cases such as sodomy, as evidencing the probability of the act
charged and the unnatural attention toward the complaining witness, victim or
accomplice. Johnston v. State, 418 S.W.2d 522, 527 (Tex. Crim. App. 1967). Next,
as argued by the State, in Wheeler, the Texas Court of Criminal Appeals held that
an extraneous offense may be admitted to rebut the defense that the defendant is
the innocent victim of a frame-up if the extraneous misconduct is "similar to the
charged one and an instance in which the 'frame-up' motive does not apply." 
Wheeler v. State, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App., 2002). And in Dennis,
the intermediate court observed that it had discovered no cases specifically
discussing the degree of similarity required before an extraneous offense may be
used to rebut the defense of fabrication. Dennis, 178 S.W.3d at 178. The Houston
court held that while the similarity required to prove a "defendant's system" naturally
is higher, because the extraneous offense evidence is being used to show the
defendant's distinctive and idiosyncratic manner of committing the criminal acts, it
does not follow that an extraneous offense admitted to rebut the defensive theory of
frame-up requires this same degree of exacting similarity between the extraneous
and charged offenses. Id. at 179 (citing Cf. Plante v. State, 692 S.W.2d 487, 492-93
(Tex. Crim. App. 1985) (en banc) (holding that the high degree of similarity between
extraneous and charged offense used in cases proving modus operandi is not
required when purpose of proof is to show intent)).

 Regarding the time issue, appellant states Villa's charged conduct occurred
in 1993-1994 according to the evidence. The Moreno conduct occurred in 1985 and
the Ortiz conduct in 1982. The State notes that appellant cited no authority for his
complaints concerning time, or dissimilarities. The State also argues that there is
no per se rule regarding remoteness of extraneous offense evidence. "We note that
there is no per se rule as to when an extraneous offense is too remote in time to be
introduced in evidence." Corley v. State, 987 S.W.2d 615, 620 (Tex. App.-Austin
1999, no pet.). The Corley court discusses remoteness ranging from two-and-a-half
years to fifteen years. Id. It concluded that the period of time separating the
extraneous transaction from the charge in chief is a factor to be considered, along
with all other relevant factors, noting that in Montgomery, the "new rules favor the
admission of all logically relevant evidence." Id. (citing Montgomery, 810 S.W.2d at
375). Earlier cases, tried under common law principles, before the new rules,
tended to favor exclusion of evidence. Id. 

 The court of criminal appeals allowed a ten-year-old extraneous offense
noting: "We explained that sufficient similarity may be shown by proximity in time
and place or by a common mode of committing the offenses." Lane v. State, 933
S.W.2d 504, 519 (Tex. Crim. App.,1996). We have already discussed the many
similarities of Villa's sexual proclivities above. Given the similarities of action, place,
and modus operandi, the time differential standing alone does not render the
extraneous offense evidence irrelevant or lacking in probative value. See id. at 519-20. 

 Although appellant did not argue other elements of rule 403, we briefly
address them. See Tex R. Evid. 403.

 The trial court also could have reasonably concluded that the State's need for
the other sexual conduct was considerable, because the State's prima facie case
rested solely upon testimony of a ten year-old boy testifying some thirteen years
later. Gigliobianco, 210 S.W.3d at 642.

 The trial court could have reasonably concluded that the other sexual conduct
did not have a tendency to suggest a decision on an improper basis. The defense
even argues Villa's encounter with Ortiz was not illegal. And though the other sexual
acts with a ten and fifteen year-old may have had some inflammatory effect, they
"relate[d] directly to the charged offense." Id. The inflammatory effect, if any, does
not outweigh the inherent probative force. See id.

 The trial court could have reasonably concluded that the other sexual conduct
did not have a tendency to confuse or distract the jury from the main issues in the
case. Id. The presentation of the extraneous offenses consumed very little time at
trial. And, because the testimony related directly to the charged offense, the jury
would not have been distracted away from the charged offense regardless of the
time required to present the evidence. Id. 

 The trial court could have reasonably concluded that the other sexual conduct
did not have any tendency to be given undue weight by the jury. See id. This is
particularly true given the trial count's admonishing instructions on the limited use
of the testimony. See Daggett, 187 S.W.3d at 454-55. Here, the trial court
admonished the jury that the evidence was introduced for the limited purpose of
addressing defensive theories and was not admitted for the purpose of proving the
character of Villa or that the defendant acted in conformity with that character. (4) We
generally presume the jury follows the trial court's instructions in the manner
presented. Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

 Finally, the trial court could have reasonably concluded that it was unlikely that
presentation of the extraneous conduct would consume an inordinate amount of time
or merely repeat evidence already admitted. Gigliobianco, 210 S.W.3d at 642. Very
little time was consumed in presenting the brief testimony of Ortiz, Cantu and
Moreno.

 Although the Texas Rules of Evidence are intentionally slanted toward the
inclusion of all relevant evidence, rule 403 gives the trial court considerable
discretion to exclude evidence when it appears to that individual judge, in the context
of that particular trial, to be insufficiently probative when measured against the
countervailing factors specified in the rule. Winegarner v. State, 235 S.W.3d 787,
791 (Tex. Crim. App. 2007). The rule thus allows different trial judges to reach
different conclusions in different trials on substantially similar facts without abuse of
discretion. Id. We hold that the trial court properly balanced the competing interests
of rule 403. See Tex R. Evid. 403. We overrule appellant's three issues.

 We affirm the judgment and sentence of the trial court.

 

 DON WITTIG

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 31st day of August, 2009.

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of
Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

2. In his brief, appellant argues there were no responses to cross-examination that put into question
both opportunity and that Villa enjoyed taking a risk of doing it in a place where he might get caught. This
parsing ignores trial defense counsel's own words and argument. Additionally, appellant cites no authority
for this argument. See Tex. R. App. P. 38.1(c).
3. It seems somewhat contradictory to argue that evidence is inadmissable and at the same time
complain there is not more evidence of corroboration. Further corroboration would necessarily include more
evidence concerning the extraneous offenses.
4. The court also instructed that before considering the evidence, the jury must believe it beyond a
reasonable doubt and then only for the limited purpose for which it was admitted.