Charles DENNIS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–04–00514–CR, 01–04–00515–CR, 01–04–00516–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 7, 2005.

Discretionary Review Refused Jan. 18, 2006.

---

Stanley G. Schneider, Schneider & McKinney, P.C., Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

JANE BLAND, Justice.

A jury convicted Charles Dennis of three counts of sexual assault with a minor and, after he stipulated to the indictment's allegations in the enhancement paragraph, assessed punishment at twenty years' confinement. On appeal, Dennis contends the trial court erred (1) in admitting testimony by M.W. of an extraneous offense; (2) in admitting the expert opinions of a psychotherapist; and (3) in refusing to order the production of evidence regarding, and allowing testimony concerning, the State's decision to dismiss its prosecution of M.W.'s sexual assault. We hold that the trial court did not abuse its discretion in admitting the extraneous offense testimony or in admitting the expert opinions of the psychotherapist. We further hold that the trial court did not abuse its discretion in refusing to allow evidence of the State's dismissal of its prosecution of M.W.'s complaint, nor in refusing to order the production of the State's memorandum concerning its dismissal. We therefore affirm the judgment.

## Facts and Background

### A. Facts of the Sexual Assault

Charles Dennis was charged with repeatedly sexually assaulting his daughter F.S. Dennis and F.S.'s mother divorced when F.S. was thirteen years old. At the time of the divorce, Dennis moved into a two-room garage apartment with his girlfriend, Rotasha Brown. Brown had two children who also lived in the apartment. F.S. and her sister visited Dennis at the apartment every other weekend. The apartment's living room contained two couches and a set of bunk-beds. When F.S. visited Dennis, she slept on one of the living room couches.

F.S. testified that on June 9, 2001, when she was fourteen years old, she visited Dennis for the weekend. That evening, Brown's children and F.S.'s sister slept on the bunk-beds. F.S. slept on one of the living room couches. Dennis fell asleep on the other living room couch. Brown went into the bedroom to sleep. During the night, Dennis came over to F.S. and pulled her to the floor. Dennis told F.S. that he was "going to teach her about sex." Dennis then removed F.S.'s shorts and underwear, got on top of her and put his penis inside of her vagina. F.S. cried. After it was over, Dennis went into the bedroom to go to sleep. F.S. went into the bathroom and eventually returned to the living room couch where she fell asleep. F.S. did not tell her mother or Brown what had happened because she did not think anyone would believe her and because she was scared.

F.S. testified that on June 23, 2001, Dennis repeated the assault. F.S. was on one of the couches watching television. Brown's children and F.S.'s sister were asleep on the bunk-beds, and Brown was asleep in the bedroom. Dennis came over

to F.S.'s couch, pulled her to the floor and told her that he wanted to teach her about sex. Dennis told F.S. that she should not tell anyone what he was doing because he would have to go away for a long time and F.S. would have to tell her sister what had happened. Dennis then put his penis inside her vagina. F.S. did not tell anyone what had happened.

In July 2001, F.S. again visited Dennis. This time, Brown, Brown's children and F.S.'s sister fell asleep in the living room while watching television. F.S. left the couch to go to the bathroom, which was in the bedroom. Dennis followed her and shut the door behind him. Dennis pushed F.S. down on the bed, got on top of her, and put his penis in her vagina. Afterwards, F.S. returned to the living room. F.S. did not tell anyone about the assault.

F.S. testified that she was assaulted during another weekend visit in July 2001. Brown was asleep in the bedroom, and Brown's children and F.S.'s sister were asleep in the bunk beds. While F.S. was watching television on one of the living room couches, Dennis came out of the bedroom and pulled F.S. to the floor. Dennis put his penis inside her vagina. F.S. cried. F.S. did not tell anyone what had happened.

During F.S.'s next weekend visit, Brown, her children, and F.S.'s sister fell asleep in the bedroom while watching television. While F.S. was watching television on one of the living room couches, Dennis came out of the bedroom and sat on the other living room couch. Dennis then came over to F.S., pulled her to the floor and sexually assaulted her.

In the fall of 2001, Dennis came to F.S.'s house but she refused to open the door for him. F.S.'s mother discovered this, at which time F.S. told her mother's boyfriend and her mother about the sexual assaults. A doctor examined F.S. and de-termined that her hymen was not intact—a condition consistent with vaginal penetration. F.S. and her mother reported the assault to the police. The Children's Assessment Center interviewed F.S. Later, an officer from the Houston Police Department interviewed F.S., and the State filed charges against Dennis.

### B. Facts of the Extraneous Offense

During the trial, the State introduced testimony from M.W., Brown's teenage cousin. M.W. testified that in June 2001, she saw her cousin at a barbeque and was invited to spend the night at her cousin's apartment. At this time, Brown's children were visiting other relatives and Dennis's children were not visiting him. After visiting with her cousin and watching television, M.W. went to sleep on the couch; Dennis and Brown slept in the bedroom. Early the next morning, after Brown had gone to work, M.W. woke up with Dennis on top of her. M.W. cried as Dennis moved her legs apart, held her arms down and moved her underwear to the side. Dennis then put his penis inside her vagina. Dennis later returned to the bedroom. M.W. was scared and did not immediately tell anyone about the assault. M.W. eventually told her mother, who took her to the police station.

Here, before the State introduced M.W.'s testimony, the trial court gave a limiting instruction—that M.W.'s testimony could be used only to rebut the defensive theory of fabrication. The court instructed the jury as follows:

You are instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reason-

able doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same to rebut the defensive theory of fabrication, if any, in connection with this offense, if any, alleged against him in the indictment and for no other purpose.

## Extraneous Offenses

In his first two issues, Dennis contends that the trial court erred in admitting M.W.'s testimony that he sexually assaulted her because the testimony involved an irrelevant extraneous offense. Dennis contends that the testimony is irrelevant because (1) its sole purpose is to prove character conformity; (2) it is not similar enough to the charged offense to be used to rebut his defensive theory; and (3) it was impeached by allegations of fabrication and therefore may not be used to rebut his defensive theory. Dennis also contends that M.W.'s testimony was unfairly prejudicial. We hold that the trial court did not err because M.W.'s extraneous offense testimony was relevant under Rule 404(b) and admissible under Rule 403.

### A. Standard of Review

A trial court's admission of extraneous evidence is reviewed for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App.2003). We will affirm a trial court's ruling that an extraneous offense has relevance apart from proving conformity with the defendant's character if the ruling is within the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990)). "When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision

too shall be given deference." *Id.* We cannot simply substitute our own decision for the trial court's. *Id.*

### B. Relevance of the Extraneous Evidence for Rebuttal of a Defensive Theory

Dennis initially contends that the extraneous offense testimony's "only logical relevance is to show [his] character trait of sexually assaulting children" and, therefore, it should have been excluded. Rule 404(b) precludes a defendant from being tried for his collateral crimes or for having a propensity for criminal conduct. TEX.R. EVID. 404(b); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex.Crim.App.1992). Extraneous offenses thus are not admissible at the guilt-innocence phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. TEX.R. EVID. 404(b). Extraneous offense evidence that has relevance beyond character-conformity, however, may be admissible. *Id.; Moses*, 105 S.W.3d at 626.

Rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses*, 105 S.W.3d at 626. In a sexual assault case, an extraneous offense may be admitted to rebut the defense that the defendant is the innocent victim of a frame-up by the complainant or others. *Wheeler v. State*, 67 S.W.3d 879, 887–88 n. 22 (Tex.Crim.App.2002). In *Wheeler*, the Texas Court of Criminal Appeals held that the trial court did not err in admitting evidence that the defendant had previously sexually assaulted his niece. *Id.* at 887–89. During trial, the defendant suggested that he was the victim of a frame-up and that the complainant had fabricated the allegations against him. *Id.* at 887. The Court of Criminal Appeals held that the extraneous offense evidence contradicted the defendant's frame-up the-

ory by showing the defendant's misconduct in circumstances in which the child making the allegations was not motivated to lie by money or revenge, and thus the extraneous testimony was relevant. *Id.* at 887.

Here, during his opening and closing argument, Dennis argued to the jury that F.S. fabricated the sexual assault allegations because she was angry at him for taking away her cellular telephone and for disciplining her because of her poor grades in school. On cross-examination, Dennis solicited testimony from witnesses that F.S. was angry when he took her cellular telephone from her and that children may fabricate allegations out of anger. In a hearing regarding the admissibility of the extraneous witness testimony, Dennis explained to the trial court that his whole defense is F.S.'s fabrication of the allegations against him "based upon her being angry." Thus, under *Wheeler*, M.W.'s testimony is relevant rebuttal evidence showing that under similar circumstances, Dennis sexually assaulted another child.

Dennis, however, claims his case is "legally indistinguishable" from *Pavlacka v. State*, 892 S.W.2d 897 (Tex.Crim.App. 1994), in which the Texas Court of Criminal Appeals held that the evidence of an extraneous sexual assault of a child was inadmissible to rebut a defense that the child fabricated his testimony. In *Pavlacka*, the defendant did not raise the defense that the complainant had fabricated testi-

mony as a result of improper influence or motive, and "the State, as proponent of the evidence, suggested no theory of logical relevance *other than character conformity.*" *Id.* at 901–02 (emphasis added). Here, unlike in *Pavlacka*, the State introduced M.W.'s testimony to rebut Dennis's defense that F.S. fabricated the sexual assault allegations—a theory other than character conformity.[1] *Pavlacka*, thus, is distinguishable.

## C. Degree of Similarity

■ Dennis next contends that M.W.'s testimony cannot be used to rebut his defensive theory that F.S. fabricated her allegations because the sexual assaults of M.W. and F.S. are not similar enough. In *Wheeler*, the Texas Court of Criminal Appeals held that an extraneous offense may be admitted to rebut the defense that the defendant is the innocent victim of a frame-up if the extraneous misconduct is "*similar to the charged one* and an instance in which the 'frame-up' motive does not apply." 67 S.W.3d at 887 n. 22 (emphasis added) (citing *Boutwell v. State*, 719 S.W.2d 164, 179 (Tex.Crim.App.1985) and *Johnston v. State*, 418 S.W.2d 522, 527 (Tex.Crim.App.1967)).

We have discovered no cases specifically discussing the degree of similarity required before an extraneous offense may be used to rebut the defense of fabrication. Dennis cites *Owens v. State*, 827 S.W.2d

---

1. Dennis further relies on *Gauna v. State*, No. 01–99–00790–CR, 2000 WL 567629 (Tex. App.-Houston [1st Dist.] May 11, 2000, pet. ref'd) (not designated for publication), to support his argument that M.W.'s testimony is not relevant beyond proving character-conformity. *Gauna*, however, does not support his argument. In *Gauna*, the State argued that the extraneous offense evidence was relevant to rebut the defendant's theory that the victim was lying. *Id.* at *6. The defendant did no more than attempt to impeach the victim's credibility—he did not argue that the defen-

dant was framed. *Id.* We held that the evidence was inadmissible because, "[u]nlike the defendants in the child sexual assault cases the State cites, appellant never offered a motive or reason for the victim's purported lie." *Id.* Here, Dennis both argued that F.S. had a motive to lie and offered evidence of the reason—she framed him because she was upset that he had disciplined her. *Gauna* thus is distinguishable because Dennis did more than merely impeach F.S.'s credibility, and thus opened the door to extraneous evidence of his prior sexual assault of a minor.

911 (Tex.Crim.App.1992), contending that the degree of similarity is one of exacting sameness. In *Owens,* the State introduced the extraneous offense evidence "on the theory that it tended to prove the criminal 'system' of [the defendant]." *Id.* at 914. The court required the extraneous offense to be "so nearly identical in method to the charged offense as to earmark them as the handiwork of the accused." *Id.* at 914–15 (internal quotations omitted).

■ The similarity required to prove a "defendant's system" naturally is high because the extraneous offense evidence is being used to show the defendant's distinctive and idiosyncratic manner of committing the criminal acts. *Id.* We hold that it does not follow that an extraneous offense admitted to rebut the defensive theory of frame-up requires this same degree of exacting similarity between the extraneous and charged offenses. *Cf. Plante v. State,* 692 S.W.2d 487, 492–93 (Tex.Crim.App. 1985) (En banc) (holding that high degree of similarity between extraneous and charged offense used in cases proving modus operandi not required when purpose of proof is to show intent).

Moreover, the facts in *Wheeler* do not support Dennis's contention that the extraneous and offense charges here must have the same high degree of similarity required in cases in which the extraneous witness testimony is used to prove a defendant's system. In *Wheeler,* evidence of the extraneous offense was admitted after the court found it similar to the charged offense. The similarity was not one of exacting sameness-in both cases, the defendant reached underneath a young girl's outer clothing and touched her private parts while a family member was nearby. *Wheeler,* 67 S.W.3d at 886–88. Likewise, in *Johnston*—cited by *Wheeler* for the proposition that similarity is required before extraneous offense testimony may be

admitted to rebut a defendant's theory of frame-up—the facts of the alleged offense and the charged offense did not have the degree of similarity required by *Owens* for cases admitting extraneous offenses to prove a defendant's system. In *Johnston,* the charged offense concerned a victim who visited the defendant's apartment several times, during which the defendant talked the victim into "hypnotizing him with a vibrator" and "kissing him on the stomach" to help the victim "with girls, sex and stuff." 418 S.W.2d at 525–26. The extraneous offense evidence admitted to rebut the defendant's theory of a frame-up was testimony that the defendant "played around" with another boy in a car and asked the boy to spend the night and have sexual relations. *Id.*

Here, both the extraneous and charged offenses involved teenage girls whom Dennis knew; both occurred in Dennis's apartment, on a couch, in the living room area; both occurred in the summer of 2001; and, during both instances, Dennis did not say much to the victim as he sexually assaulted her. We hold that the similarity between the sexual assaults of M.W. and F.S. is at least as strong as that presented in *Wheeler* and *Johnston,* and thus, sufficient to allow use of the extraneous offense evidence to rebut Dennis's theory that F.S. framed him.

### D. Alleged Fabrication by Extraneous Witness

Dennis also contends that under *Wheeler,* M.W.'s testimony is not relevant because he produced evidence that M.W. had a motive to lie. Dennis again cites to footnote 22 in *Wheeler,* which states that an extraneous offense may be admitted to rebut the defense that the defendant is the innocent victim of a frame-up if the extraneous misconduct is "similar to the charged one and *an instance in which the*

*'frame-up' motive does not apply."* 67 S.W.3d at 887 n. 22 (emphasis added). Dennis contends that *Wheeler* requires an extraneous offense to be an instance in which no motive exists for the witness to frame the defendant, and because he presented evidence that M.W. had a motive to lie, the extraneous offense was inadmissible.

*Wheeler,* however, notes that "the" frame-up motive with regard to the complaining witness must not exist; not the complete absence of any frame-up motive with respect to the extraneous witness. *See id.* We interpret *Wheeler* as requiring that the extraneous offense be one for which the *complainant's* "frame-up" motive does not apply—not that a motive to fabricate the extraneous offense be wholly absent. To read *Wheeler* otherwise would permit a defendant to exclude any extraneous offense evidence merely by alleging that the extraneous offense witness has some motive—one wholly unrelated to that of the complaining witness's—to lie.

Although it addressed the issue under Rule 403—instead of Rule 404(b)—the Texas Court of Criminal Appeals rejected an argument similar to Dennis's in *Montgomery v. State,* 810 S.W.2d at 382 (adopted by court in opinion on rehearing at 390 n. 3). In *Montgomery,* the court rejected the argument that the extraneous offense testimony had limited usefulness because its source was an ex-wife who could not be considered an objective, unbiased, witness. *Id.* The court held that it would be improper for the trial court to omit extraneous offense testimony because the witness has a motive to lie—rather, credibility is a question for the jury to decide. *Id.*

Here, Dennis's "frame-up" theory against F.S. is that she fabricated the allegations against him because she was angry that he had disciplined her for abusing her

cellular telephone and for receiving poor grades. Dennis claims that M.W.'s testimony is not credible because she also had a motive to lie—because she was jealous of Brown, her cousin and Dennis's girlfriend, and because she was afraid to tell her mother her fear that she might be pregnant. Dennis's allegation that M.W. also had a motive to lie involves the evaluation of M.W.'s credibility, which Dennis attacked during her cross-examination. Dennis's impeachment theory that M.W. had motives to lie—different from those F.S. allegedly had—does not preclude the relevance of the extraneous offense.

### D. Admissibility under Rule 403 Balancing Test

Even if evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), a trial court should exclude it from evidence if the probative value is substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 404(b); *Moses,* 105 S.W.3d at 626 (citing *Montgomery,* 810 S.W.2d at 387). Courts should consider the following factors under a Rule 403 analysis: (1) the strength of the extraneous offense evidence to make a fact or consequence more or less probable; (2) the potential of the extraneous offense to impress the jury in some irrational but indelible way; (3) the time during trial that the State requires to develop evidence of the extraneous misconduct; and (4) the need by the State for the extraneous evidence. *Wheeler,* 67 S.W.3d at 888.

Here, M.W.'s testimony has similarities to F.S.'s testimony—both involved assaults by Dennis, in the same apartment, during the same month and year, on or about the same couch, and to teenage girls whom he knew. The extraneous offense evidence thus suggests that F.S.'s allegations were not the result of Dennis's taking away her

cellular telephone. As such, this evidence is relevant to rebut Dennis's theory of fabrication. Second, M.W.'s testimony was not especially graphic, and the trial judge correctly instructed the jury to consider it only for a limited purpose. Third, our review of the record indicates that M.W.'s direct examination was not unduly lengthy.[2] Finally, Dennis strongly contested that the sexual assault actually occurred. The trial court reasonably could have concluded that the State demonstrated that it needed M.W.'s testimony to counter lengthy testimony elicited by Dennis, during both direct and cross-examinations of several witnesses, that F.S. was angry at him for taking away her cellular telephone and thus fabricated the allegations.

Although M.W.'s testimony of an extraneous sexual assault carried emotional weight and the danger of impressing the jury in an indelible way, the trial court's decision to admit the extraneous offense evidence is within the zone of reasonable disagreement. We thus hold that the trial court did not abuse its discretion in admitting M.W.'s testimony.

## Scientific Evidence

In his third issue, Dennis contends the trial court erred in permitting Dr. Jean Lerner, a child psychotherapist and social worker, to testify about the general characteristics of a child victimized by sexual assault. Dennis argues that the testimony was inadmissable under Rule 702 because Lerner "lacked the training and experience to give such opinions and she lacked the underlying data upon which to base her opinion."

### A. Facts Concerning Lerner's Qualifications and Testimony

Lerner testified that she obtained a master's degree in social work from the University of Houston in 1972. She became an accredited certified social worker in 1982 and obtained her advanced clinical practitioner's certificate in 1984. She earned a doctorate in psychotherapy in 1991 from the International University. Lerner's training focused on helping children, adolescents and adults work through trauma, emotional problems, or behavioral issues. She has practiced for thirty-five years, working primarily with abused children. She has worked with various agencies in Houston that assist families and children. In her practice, Lerner has seen many children. In 1999, Lerner presented a seminar to professionals on sexual abuse and the treatment of children in play therapy. She has read extensively on the cognitive investigation of abused children. Besides her training and experience, Lerner relied on documentation from the American Academy of Child and Adolescent Psychiatry and the American Academy of Pediatrics in forming her opinions.

Lerner testified that she personally evaluated F.S. before and after the sexual assaults. After the assaults, F.S. had changed her dress to a provocative style. Lerner further testified that F.S. told her that she was worried about Dennis's spending Christmas alone, that she was angry with Dennis for sexually assaulting her, and that she was feeling anxious about the stress in the family. F.S. revealed feelings of hopelessness based on an inability to deal with her anger towards her father while still missing him. At trial, Lerner testified that F.S.'s expressed feel-

---

**2.** We decline Dennis's invitation to include in this analysis the time spent out of the presence of the jury on motions and arguments concerning M.W.'s testimony. The potential for unfair prejudice occurs if the State spends an undue amount of time presenting the extraneous offense to the jury.

ings and dress are consistent with those of sexually abused children.

### B. Standard of Review

We will not disturb a trial court's determination of whether a witness is qualified as an expert, absent a clear abuse of discretion. *Morales v. State*, 32 S.W.3d 862, 865 (Tex.Crim.App.2000). We gauge an abuse of discretion by testing whether the trial court acted without reference to any guiding rules or principles. Overall, "a trial court enjoys wide latitude in determining whether expert testimony is admissible". *Hernandez v. State*, 53 S.W.3d 742, 750 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

### C. Admissibility of Lerner's Testimony

Reliability is the cornerstone of determining the admissibility of scientific testimony—unreliable evidence will not assist a jury to understand the evidence or accurately determine a fact in issue. *State v. Medrano*, 127 S.W.3d 781, 784–86 (Tex. Crim.App.2004). "When addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to scientific method, [the usual] requirement of reliability applies but with less rigor than to the hard sciences." *Nenno v. State*, 970 S.W.2d 549, 561 (Tex.Crim.App.1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999); *Medrano*, 127 S.W.3d at 785. When soft sciences are at issue, the trial court should determine (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Medrano*, 127

S.W.3d at 785 (citing *Nenno*, 970 S.W.2d at 561).

The Court of Criminal Appeals examined expert testimony concerning behavioral characteristics of sexually abused children in *Duckett v. State*, 797 S.W.2d 906 (Tex.Crim.App.1990), *disapproved on other grounds by Cohn v. State*, 849 S.W.2d 817, 819 (Tex.Crim.App.1993). In *Duckett*, the court held that a qualified social worker demonstrating expertise in the field of child sexual abuse can testify to background patterns found in exploited children and can offer opinions of whether the complainant's statements demonstrate a pattern consistent with other exploited children, but cannot offer expert opinions of the child's truthfulness. *Id.* at 915–17. Expert testimony helps the jury understand the seemingly illogical behavior of the child who changes her story, seems confused, and does not immediately disclose a sexual assault. *Id.* at 916.

Here, Lerner's opinions regarding the characteristics and dynamics of sexually abused children are based on her extensive experience working with, and learning about, abused children. The State thus sufficiently demonstrated the reliability of Lerner's expert testimony. *See Duckett*, 797 S.W.2d at 908, 917; *Hernandez*, 53 S.W.3d at 751.

We are not persuaded by Dennis's argument that Lerner's opinions lacked a sufficient basis because they were not based on her own examination. First, Lerner personally met with F.S. on several occasions, both before and after the sexual abuse. Second, an expert may base her opinions on facts made known to her as well as facts personally observed. Tex.R. Evid. 703; *see also Duckett*, 797 S.W.2d at 908 (certified social worker testified without personally examining child—he based expert opinion on various witnesses' testimony, statements in police report and child's

videotaped interview). The trial court did not abuse its discretion in admitting Lerner's expert opinions into evidence.

### Evidence Concerning the Dismissal of M.W.'s Case

Dennis's last three issues concern evidence of the State's earlier dismissal of M.W.'s case. Before F.S. told the police that she had been sexually assaulted, the State had investigated M.W.'s allegations of sexual assault, and brought charges against Dennis based on them. Thereafter, Dennis obtained a recorded statement from M.W.'s mother stating that she did not believe her daughter's allegations. Shortly after Dennis gave a copy of this statement to the prosecutor, the State dismissed its charges in connection with the sexual assault of M.W.

At trial, Dennis introduced into evidence the recorded statement of M.W.'s mother. M.W.'s mother testified—she admitted that she previously had stated that she did not believe M.W., and that she thought Dennis was innocent. She explained that she had made these statements because M.W. "did not want to go no further because she didn't want to hurt his family. She didn't want his—his children to be without a father." M.W. also testified. She admitted that on one occasion she had told her mother that Dennis did not do anything to her. She also admitted that her details of how the sexual assault occurred had changed over time.

During the trial, Dennis asked the State to produce its file on M.W.'s case, including the reasons why the State dismissed its charges. The trial court reviewed the records *in camera* and determined that they were not discoverable. During his cross-examination of M.W. and M.W.'s mother, Dennis inquired about the State's dismissal of its prosecution of M.W.'s case. The trial court sustained the State's objec-

tions to these inquiries. Finally, Dennis attempted to call as a witness the assistant district attorney who dismissed the State's prosecution of M.W.'s case. The trial court granted the State's motion to exclude this testimony.

Dennis contends the trial court erred (1) in not requiring the State to produce its file regarding the dismissal of M.W.'s case; (2) in sustaining the State's objections to his cross-examination of M.W. and M.W.'s mother concerning the State's dismissal of the prosecution; and (3) in granting the State's motion to exclude testimony from the district attorney concerning the reason the State dismissed the prosecution of M.W.'s case.

#### A. Relevance

 Here, the fact that the State did not prosecute and obtain a conviction in M.W.'s case is irrelevant. First, extraneous misconduct may be admissible evidence even if it does not result in a conviction. *See, e.g., Rankin v. State,* 953 S.W.2d 740, 741 (Tex.Crim.App.1996) ("An extraneous offense is defined as any act of misconduct, *whether resulting in prosecution or not,* that is not shown in the charging papers." (emphasis changed)). Second, there are many possible reasons for the State's choice in not prosecuting a case. *See Mendiola v. State,* 61 S.W.3d 541, 546 (Tex.App.-San Antonio 2001, no pet.). Third, to the extent that Dennis attempts to use the evidence as another's opinion of M.W.'s credibility, it is improper. *See Schutz v. State,* 957 S.W.2d 52, 59 (Tex. Crim.App.1997) (stating that generally it is improper for witness to offer direct opinion as to truthfulness of another witness).

Dennis cites to *Mendiola v. State,* 21 S.W.3d 282 (Tex.Crim.App.2000) and *Lape v. State,* 893 S.W.2d 949 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd), in support of his contention that the dismissal of

charges of an extraneous offense is admissible evidence. *Mendiola* concerns evidence admitted during the punishment phase of a trial and the considerations of what should be admitted to determine a defendant's criminal record. *Mendiola* is inapplicable to this case because, as the court explained, "the sentencing phase presents different issues than those contemplated in the guilt/innocence phase" and at the sentencing phrase, policy rather than relevancy is at issue. *Id.* at 285. Moreover, on remand, the Texas Court of Appeals determined that the trial court did not abuse its discretion in refusing to admit evidence that the charges on an extraneous offense were dismissed because evidence of the dismissal was irrelevant. *Mendiola,* 61 S.W.3d at 546.

Nor are we persuaded by Dennis's citation to *Lape. Lape* holds that a prior *conviction of filing a false report* is admissible because, under Rule of Evidence 609, a witnesses's prior convictions involving moral turpitude may be used to attack the witnesses's credibility. *Id.* at 957–58. Here, neither M.W. nor M.W.'s mother was convicted of filing a false report. We hold that the trial court did not abuse its discretion in ruling that evidence of the State's dismissal of Dennis's earlier prosecution was not relevant.

### B. Brady Violation

■■■ Dennis contends that the State's refusal to produce its file on M.W.'s case, including notes explaining the dismissal of its prosecution of Dennis for the alleged assault of M.W., violated his constitutional rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the United States Supreme Court held that the State's suppressing material evidence favorable to the accused, upon the accused's request for the evidence, denies the accused due process

of law under the Fourteenth Amendment of the United States Constitution, irrespective of the State's good or bad faith in withholding the evidence. *Id.* Withheld evidence is material if there is a reasonable probability that the proceeding's outcome would have differed had the evidence been disclosed. *United States v. Bagley,* 473 U.S. 667, 680–82, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985).

Dennis speculates that the undisclosed documents contain evidence that the State "introduced trial testimony that it knew or should have known was perjured." The undisclosed documents consist of the recorded statement already in the possession of Dennis and three additional pages of notes. We have reviewed these documents and disagree. First, the undisclosed documents do not have information in addition to that already in the possession of Dennis and that used by Dennis during his examination of M.W. and M.W.'s mother. There is not a reasonable probability that the production of the same-type of information would have changed the outcome of the trial and thus, the evidence is not material. Second, contrary to Dennis's speculation, the notes do not contain evidence that the State introduced perjured testimony. Third, as noted above, evidence of the dismissal was not admissible at trial. *See Lagrone v. State,* 942 S.W.2d 602, 615 (Tex.Crim.App.1997) (stating that State has no duty to produce evidence that would be inadmissible at trial).

Furthermore, our review of the undisclosed documents reveals merely that the State acknowledged inconsistent testimony of which Dennis's counsel already was aware—this is not evidence that the State introduced perjured testimony. *See Weisinger v. State,* 775 S.W.2d 424, 427 (Tex. App.-Houston [14th Dist.] 1989, pet. ref'd) (citing *Nix v. Whiteside,* 475 U.S. 157, 191, 106 S.Ct. 988, 1007, 89 L.Ed.2d 123 (1986))

(holding that "[a] lawyer's certainty that a change in . . . recollection is a harbinger of intended perjury—as well as judicial review of such apparent certainty—should be tempered by the realization that, after reflection, the most honest witness may recall (or sincerely believes he recalls) details that he previously overlooked."); *see also Duckett,* 797 S.W.2d at 915–17 (recognizing that abused children often change their testimony).

## Conclusion

We conclude (1) the trial court did not abuse its discretion in admitting the extraneous offense testimony of M.W.; (2) the trial court did not abuse its discretion in admitting the expert opinions of the psychotherapist; (3) the trial court did not err in excluding evidence of the State's decision to dismiss its prosecution of Dennis for the sexual assault of M.W.; and (4) the State did not violate *Brady* in refusing to produce its notes regarding its dismissal of the prosecution of M.W.'s case. We therefore affirm the judgment of the trial court.

**J.M., Appellant,**