Affirmed as Modified; Opinion Filed January 3, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-11-01333-CR

### JOSE SYLVESTERE LOPEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

### On Appeal from the 282nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F09-13031-S

## OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Myers

Appellant was convicted of continuous sexual abuse of a child and sentenced to life imprisonment. In four points of error, he challenges the admission of extraneous offense evidence and urges us to reform the judgment. As modified, we affirm the trial court's judgment.

### BACKGROUND AND PROCEDURAL HISTORY

Complainant K.A. was three years old when her mother and appellant moved in together; she was six when they got married. K.A. testified that appellant, who she called "Dad," sexually assaulted her on numerous occasions beginning when she was six years old and continuing until the age of eight, when she first reported the abuse. K.A. testified that the assaults occurred "at least twice a month, if not more." Some of these assaults occurred at appellant's workplace—an auto

repair shop.

During the guilt-innocence phase of the trial, appellant called his brother, Juan Jose Lopez, to testify for the defense. Juan testified that, as a sibling, he had known appellant his entire life, that appellant was his closest sibling, and that he had observed how appellant's family interacted. Defense counsel then asked, "[W]as [appellant] the kind of person that would abuse children?" The witness responded, "No." During her cross-examination, when the prosecutor started to ask Juan whether he was aware "that there is an allegation," defense counsel objected under rule of evidence 404(b). In a hearing held outside the presence of the jury, the prosecutor asked Juan if he was aware appellant had been accused of grabbing the breasts of a fifteen year-old girl. Juan responded, "Yes." The prosecutor asked Juan what he knew about the allegations. He replied, "Just that Claudia told me. I don't know if there's any documentation to it or not. I don't know." Defense counsel objected on the basis of hearsay, rule of evidence 404(b), and that any probative value of the evidence was outweighed by its prejudicial effect under rule 403. The trial court overruled the objections on the basis that the evidence was being offered to rebut the witness's testimony that appellant was not the type of person who would abuse children. The court then conducted the rule 403 balancing test and determined the evidence was not unfairly prejudicial, and that it would not confuse the issues or mislead the jury, because it was being offered "to rebut a direct quote by this witness . . . that the defendant is not the type of person who abuses children." After the jury returned to the courtroom, the prosecutor continued the cross-examination:

Q. Mr. Lopez, it's your opinion that your brother is not the kind of person who would sexually abuse children; is that correct?

A. Yes. Correct.

Q. But isn't it also correct that you're aware of an accusation that your brother grabbed the breasts of a 15-year-old-girl; isn't that correct?

A. Just from Claudia's words.

The trial court gave the jury a limiting instruction.[1] On re-direct examination, defense counsel asked the witness, "Do you believe these allegations of Claudia?" He responded that he did not.

The State subsequently called the fifteen year-old girl referred to in the prosecutor's question, V.M., as a rebuttal witness. During a hearing held outside of the presence of the jury, defense counsel objected to the witness's testimony based on rule 404(b) and because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. The trial court advised it had done a balancing test and overruled the objections. During V.M.'s testimony, the trial court admonished the jury that the evidence was not admissible to prove appellant's character or to show conformity with that character.[2]

V.M. was a seventeen-year-old senior in high school at the time of trial. She testified that she was the sister of Claudia Lopez, appellant's wife, and that she was employed as a secretary in appellant's auto repair shop when she was sixteen years old. On Saturday, March 7, 2009, appellant came up behind her as she sat at her desk and massaged her shoulders. V.M. told appellant to stop, but he "just continue[d]." Appellant then started kissing V.M. on the cheek and rubbing her breasts. She ran to the bathroom and locked the door. She left the bathroom when she heard the telephone ring. The telephone call was from V.M.'s mother, and V.M. immediately told her what happened.

---

[1] The court's limiting instruction was as follows:

> At this point, I need to give the same instruction as earlier regarding—regarding this, this being the fact that it's being offered not to prove that the defendant—it's not admissible to prove the character of a person in order to show the action and conformity therewith, but instead it's being offered for another purpose such as proof of motive, opportunity, preparation, plan, knowledge, absence of mistake, or accident. It's being offered for those purposes, and that is what the jury may consider.

[2] The court admonished the jury as follows:

> And, ladies and gentlemen, at this point, I do need to let you know that, again, my previous admonishment regarding evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it can be used for a—another purpose in—in this matter. But it cannot be shown—it cannot be used by you to prove the character of a person in act in order to show conformity.

V.M.'s father picked her up from the shop approximately five minutes later. V.M.'s father went inside the shop and confronted appellant, but appellant "didn't say anything." "[H]e was just sitting down shaking," according to V.M. She has not seen appellant since that time.

The jury convicted appellant of continuous sexual abuse of a child, as charged in the indictment. The trial court assessed punishment at life imprisonment.

## DISCUSSION

### *Appellant's Brother*

In his first point of error, appellant contends the trial court erred by allowing Juan to testify regarding what Claudia Lopez, appellant's wife, told Juan about the alleged extraneous offense.

When reviewing a trial court's ruling admitting evidence, we apply an abuse of discretion standard of review. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The court does not abuse its discretion as long as its decision to admit evidence falls within the zone of reasonable disagreement. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

A witness who testifies to another's good character may be cross-examined to test the witness's awareness of relevant "specific instances of conduct." TEX. R. EVID. 405(a); *Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002). Character may be proved through either opinion or reputation testimony. *Wilson*, 71 S.W.3d at 350. While reputation witnesses are generally asked "have you heard" questions, opinion witnesses are asked "did you know" questions. *Id.* When a witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach that witness's testimony by cross-examining the witness concerning similar extraneous offenses. *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).

Appellant argues Juan's testimony on cross-examination as to what appellant's wife told him regarding the incident with V.M. was based on hearsay and should have been excluded. But the

record shows Juan testified on direct that, as a sibling, he had known appellant his entire life, appellant was his closest sibling, and that he had opportunities to see appellant's family interact. Juan then testified that appellant was not the kind of person who would abuse children. It was permissible for the State to cross-examine Juan regarding his awareness of relevant specific instances of appellant's conduct. *See* TEX. R. EVID. 405(a); *Wilson*, 71 S.W.3d at 350. We cannot say the trial court abused its discretion by overruling appellant's objection. We therefore overrule appellant's first point.

### Extraneous Offense Evidence

In his second point, appellant contends the trial court abused its discretion by admitting the extraneous offense involving V.M. because it was offered as character-conformity evidence solely to prove appellant committed the charged offense against K.A., in conformity with his bad character. Appellant relies on rule 404(b) of the rules of evidence. *See* TEX. R. EVID. 404(b).

A trial court's decision admitting extraneous offense evidence is reviewed under an abuse of discretion standard. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). Rule 404(b) prohibits the admission of extraneous offense evidence to prove an individual's character or to show action in conformity with that character. TEX. R. EVID. 404(b). This limitation is not based on legal relevance; rather, the evidence is inherently prejudicial, has a tendency to confuse the issues, and forces the accused to defend himself against uncharged crimes in addition to the charged offense. *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). But extraneous offense evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses*

*v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Id.* at 626. A defendant's presentation of a defensive theory in an opening statement, for example, may open the door to the admission of extraneous offense evidence to rebut the defensive theory. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Extraneous offenses are admissible to rebut defensive theories raised by the testimony of a defense witness during direct examination or a State's witness during cross-examination. *See Daggett*, 187 S.W.3d at 453-54; *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996). Furthermore, evidence of extraneous offenses in sexual assault cases is properly admitted under rule 404(b) to rebut a defensive theory of retaliation or fabrication or that the defendant is "the innocent victim of a 'frame-up' by the complainant or others." *Wheeler*, 67 S.W.3d at 888 n.22; *see also Bass*, 270 S.W.3d at 563 & n.8. "In such a situation, the extraneous misconduct must be at least similar to the charged one and an instance in which the 'frame-up' motive does not apply." *Wheeler*, 67 S.W.3d at 888 n.22; *see also Dennis v. State*, 178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

The record shows that, at trial, appellant offered several defensive theories: (a) he was a loving father and not the kind of person who would sexually abuse a child; (b) K.A. fabricated the abuse allegations; and (c) appellant's wife, Claudia, was behind the fabrication of the abuse allegations. We will examine each of these theories.

Beginning with the first theory, defense counsel told the jury during opening statements that appellant "was not an abusive type of person." Juan Lopez, appellant's brother, testified that he had seen how appellant's family interacted, and that appellant was not the kind of person who would abuse children. Rene Lopez, another brother, testified that he had been close to appellant over the

previous five years and that appellant was not the kind of person who would sexually abuse children. Appellant testified that he considered K.A. to be his own daughter and "always had a very good father/daughter relationship with her." In his closing argument, defense counsel told the jury that appellant was "not the kind of person that would commit this type of case."

As for appellant's second theory, defense counsel cross-examined K.A. about her communications with the District Attorney's Office, police officers, and a counselor. He asked her whether she was the center of attention during the counseling sessions and whether she enjoyed being the center of attention, and whether Claudia or anyone else told her what to say to the police. In his closing statement, defense counsel stated that Claudia asked K.A. several times whether she had been touched "by a man," and that a child who is repeatedly asked such a question "can come to understand that that's what you want the child to say." Counsel also argued that K.A. enjoyed being the "center of attention" and that K.A.'s interactions with prosecutors, investigators and counselors over a two year period reinforced the child's accusations.

Turning to appellant's third defensive theory, defense counsel began his opening statement by telling the jurors that they would hear testimony about "very turbulent . . . family circumstances" involving K.A., and that appellant and Claudia fought "like cats and dogs" from the beginning of their relationship. Appellant's brother, Rene Lopez, testified that Claudia's emotions "would change pretty quickly from one state to another"—from very happy and smiling to fighting with appellant. He testified that the fighting between appellant and Claudia intensified during the three to four months before appellant's arrest, and that Claudia verbally abused appellant by cursing at him and calling him names. This verbal abuse included calling appellant a "bastard," accusations that he was "not any fucking good anymore," and "things like that." Appellant's son, Jose Sylvestere Lopez, Jr., testified he did not get along with Claudia because she hit and slapped him, and called him names

—7—

like "dumb" and "weird." He testified that he once saw appellant and Claudia push and shove one another and say "bad words." Claudia accused appellant of spending more time with his son than with K.A., then attacked appellant with a kitchen knife. After Jose, Jr. went to bed, he could hear appellant and Claudia "screaming to each other."

Appellant testified that he had a difficult and turbulent relationship with his wife, and that there were "bad feelings" between them. Appellant said his wife suffered from "mental" problems because she had been physically and psychologically abused by her mother. He attributed some of their marital problems to a disagreement with his wife about her belief in her mother's use of witchcraft. When K.A. was between three-and-a-half and four years old, appellant saw Claudia grab her by the hair and slap her on the face six times because the child had urinated in her clothing. On another occasion, appellant saw Claudia "practically" drag the child by her hair, then "hit her on the back of the head." Appellant intervened to stop Claudia from hitting K.A. Appellant also alleged that Claudia attacked him with a knife several times. He told the jury he saw Claudia verbally abuse his son, Jose, Jr., and that Claudia "always made" his son "feel more inferior" because Claudia believed K.A. was "more intelligent than he is."

In his closing argument, defense counsel said that appellant had been "trying to overcome" a chaotic marital relationship. He argued there were "severe problems" in appellant's marriage "that resulted in violence between [appellant] and his wife where she attacked him with a knife." Defense counsel also noted that Claudia denied ever using violence against anyone, and "on that point Claudia" was "not telling the truth."

Based on this record, the trial court could have reasonably concluded the extraneous offense evidence regarding V.M. was offered to rebut appellant's several defensive theories. The extraneous offense was sufficiently similar to the charged offense to be admissible. Both the extraneous and

—8—

the charged offense involved underage females that appellant knew; both individuals were related to appellant's wife; both the extraneous offense and some of incidents involving the complainant occurred at appellant's workplace. Therefore, we cannot say the trial court abused its discretion by overruling appellant's rule 404(b) objection. We overrule appellant's second point of error.

### Probative Value of Extraneous Offense Evidence

In his third point of error, appellant contends the trial court abused its discretion by concluding that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice. In his brief, appellant limits his discussion under this issue to Juan Lopez's testimony. We will do the same.

Under rule of evidence 403, relevant evidence of extraneous offenses may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See* TEX. R. EVID. 403; *see also Montgomery v. State,* 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g) (presumption relevant evidence more probative than prejudicial). In considering a rule 403 challenge, courts must balance (1) the inherent probative force of the evidence, that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, commonly, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State,* 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). We should reverse the trial court's balancing determination "rarely and only after a clear abuse of discretion." *Montgomery,* 810 S.W.2d at 392. In addition, because rule

403 permits the exclusion of admittedly probative evidence, "it is a remedy that should be used sparingly," particularly in "sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

The rule 403 factors weigh in favor of admission. The extraneous offense evidence was probative to rebut appellant's defensive theories that appellant was not the type of person who would sexually abuse a child, that the abuse allegations were fabricated, and that appellant's wife was behind the fabrication. Juan testified directly that appellant was not the type of person who would abuse a child. The State's cross-examination regarding whether he was aware that appellant had been accused of abusing V.M., an underage girl, was probative in order to challenge Juan's testimony and rebut appellant's defensive theories. Moreover, the State's need for such evidence was considerable. Although there was physical evidence of abuse, there was no DNA evidence linking appellant to the instant offense. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (State's need for evidence was "considerable" because there were no eyewitnesses or physical evidence available to corroborate complainant's testimony, and State needed to rebut appellant's claim of fabrication). We see little indication the extraneous offense evidence confused or distracted the jury from the main issues. The extraneous offense evidence involved a single incident. The testimony in question was relatively brief and less graphic than the facts pertaining to the State's case-in-chief. The trial court gave the jury a limiting instruction. We cannot say the trial court abused its discretion by concluding that the probative value of the extraneous offense evidence was not outweighed by the danger of unfair prejudice. We overrule appellant's third point.

### *Reformation of Judgment*

In his fourth point, appellant asks us to modify the judgment to reflect the correct names of the attorneys that represented appellant and the State. This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information before us to do so. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd).

The judgment lists the attorney for the State as Marcy Curry and the attorney for appellant as Hugo Aguilar. The reporter's record, however, indicates that Amy Derrick and Shelley Fox represented the State, and that William Rink represented appellant. We sustain appellant's third point and reform the judgment to reflect that the attorneys of record were Amy Derrick and Shelley Fox for the State, and William Rink for appellant.

As modified, we affirm the trial court's judgment.


_____
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
111333F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSE SYLVESTERE LOPEZ, Appellant

No. 05-11-01333-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the 282nd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F09-13031-S).
Opinion delivered by Justice Myers, Justices Morris and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under the section entitled "Attorney for State," "Marcy Curry" is replaced with "Amy Derrick and Shelley Fox."

Under the section entitled "Attorney for Defendant," "Hugo Aguilar" is replaced with "William Rink."

As modified, the judgment is **AFFIRMED**. We **DIRECT** the trial court to enter a new judgment that reflects these modifications

Judgment entered January 3, 2013.

_____
LANA MYERS
JUSTICE