

IN THE
TENTH COURT OF APPEALS

No. 10-13-00006-CR

**VIRGIL LEE JONES,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

From the 272nd District Court
Brazos County, Texas
Trial Court No. 12-00451-CRF-272

**MEMORANDUM OPINION**

In two issues, appellant, Virgil Lee Jones, challenges his conviction for indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). We affirm.

I. BACKGROUND

In this case, appellant was charged by indictment with one count of indecency with a child by contact, a second-degree felony that was enhanced to a life sentence based on appellant's prior conviction for indecency with a child. *See id.; see also id.* §

12.42(b), (c)(2) (West Supp. 2012). The charge stems from an incident involving a five-year-old child, A.H.

At trial, A.H. testified that she lives with her aunt, uncle, and four brothers. A.H. noted that she often called appellant "dad" because he acted like he was her father.[1] Of the four brothers living in the house, the youngest, Jeremiah, is appellant's child. Apparently, appellant and A.H.'s mother, Becky, were married.[2] However, pursuant to investigations by Child Protective Services ("CPS"), the children were removed from appellant's home and placed with A.H.'s aunt and uncle. A.H.'s aunt and uncle had adopted all of the children, except for Jeremiah. The allegations as to A.H. surfaced around the same time that appellant and A.H.'s aunt and uncle were fighting over custody of Jeremiah.

In any event, A.H. testified that appellant previously lived with her and her mother. Though she could not recall the precise dates, A.H. recounted that appellant touched her vagina several times while she was in her bedroom. The indictment alleged that the incidents transpired on or about June 1, 2010.

In July 2011, A.H.'s aunt found A.H., who was six years old at the time, masturbating while lying naked on her bed. When asked what was going on, A.H. replied, "Nothing." A.H.'s aunt then asked A.H. if someone had showed her how to masturbate. A.H. eventually acknowledged that appellant had shown her how to masturbate. A.H.'s aunt then called a CPS caseworker, who told her to take A.H. to

---

[1] Testimony at trial revealed that appellant is not A.H.'s father.

[2] Becky is A.H.'s uncle's sister.

Scotty's House Child Advocacy Center ("Scotty's House") in Bryan, Texas, to be interviewed.

Nick Canto, a forensic interviewer at Scotty's House, testified that he interviewed A.H. three times about the incidents. In the first two interviews, A.H. recognized that no one is supposed to touch her on the part of her body she used "to pee and poo" and noted that no one had touched her there. However, in the third interview, A.H. told Canto that appellant had pulled down her pants and panties and stuck his finger in her private part. According to Canto, A.H. stated that appellant had threatened that she would get in trouble if she told someone about the incident. A.H. also told Canto that appellant did not do it again after the fifth time and that she was "shocked." She also stated that she did not feel much because she was asleep at the time the incidents occurred.

At trial, the State alleged that defense counsel repeatedly questioned the truthfulness of A.H.'s testimony in his voir dire, opening and closing statements, and his questioning of witnesses. The State also argued in the trial court that defense counsel suggested that A.H.'s outcry was fabricated because of the ongoing custody battle between appellant and A.H.'s aunt and uncle regarding Jeremiah. To rebut appellant's purported defensive theory, the State called two witnesses—Angela H. and L.M.—both of whom testified that, when they were teenagers, appellant touched their vaginas while they were asleep. Defense counsel objected to this testimony under Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b). However, after a

hearing, the trial court overruled appellant's objections and admitted the testimony. It is this testimony that is the focus of appellant's appellate complaints.

At the conclusion of the evidence, the jury found appellant guilty of the charged offense. The trial court found the enhancement paragraph contained in the indictment to be true and sentenced appellant to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Appellant filed a pro se motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II. EXTRANEOUS-OFFENSE EVIDENCE

In both of his issues on appeal, appellant contends that the trial court abused its discretion in overruling his objections to the testimony of Angela H. and L.M. Specifically, appellant argues that he did not assert a defense of fabrication at trial, and as such, extraneous-offense evidence was not admissible for rebuttal. We disagree.

## A. Applicable Law

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of that evidence is not substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX. R. EVID. 404(b). But it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id.* Rebuttal of a defensive theory is one of the "other purposes" for which extraneous-offense evidence may be admitted under Rule 404(b). *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see Dennis v. State*, 178 S.W.3d 172, 180 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Though appellant lodged objections under Rules 403 and 404(b) in the trial court, he focuses his appellate complaints on Rule 404(b). Accordingly, we will focus our analysis on Rule 404(b).

**B.    Discussion**

As argued in the trial court, the State argues on appeal that the complained-of testimony was offered to rebut appellant's defensive theory of fabrication. This Court has stated the following regarding the admission of extraneous-offense evidence used to rebut a fabrication defense:

> To be admissible for rebuttal of a fabrication defense, "the extraneous misconduct must be at least similar to the charged one." *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002); *Galvez v. State*, No. 10-06-00332-CR, 2009 Tex. App. LEXIS 6300, at *8 (Tex. App.—Waco Aug. 12, 2009, pet. ref'd) (not designated for publication); *accord Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Although some similarity is required, the requisite degree of similarity is not as exacting as necessary when extraneous-offense evidence is offered to prove identity by showing the defendant's "system" or modus operandi. *Dennis*, 178 S.W.3d at 179; *see Galvez*, 2009 Tex. App. LEXIS 6300, at *8.

*Newton v. State*, 301 S.W.3d 315, 317-18 (Tex. App.—Waco 2009, pet. ref'd) (op. on remand).

Appellant concedes that the State may present extraneous-offense evidence to rebut a theory of fabrication. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) ("Our case law supports a decision that a defense opening statement, like that made in this case, opens the door to the admission of extraneous-offense evidence, like that admitted in this case, to rebut the defensive theory presented in the defense opening statement. . . . This case law makes no categorical distinctions between 'fabrication' defenses and 'frame-up' or 'retaliation' defenses." (internal citations omitted)). The issue turns on whether the extraneous-offense evidence has non-character-conformity relevance by, for example, rebutting a defensive theory or making less probable defensive evidence that undermines an elemental fact. *See id.* at 563 n.8; *see also Galvez*, 2009 Tex. App. LEXIS 6300, at *5. Instead, appellant argues that he did not assert a fabrication defensive theory during trial.

A review of the record proves otherwise. In his opening statement, defense counsel stated the following:

> As you can imagine, we're dealing with a small child. It's not as clean-cut as the State would have you believe. When you watch the evidence, when you watch these videos, listen very carefully to the content of what happened when. The story changes. There's conflicts in the story.
>
> . . . .
>
> The outcry, pay particular attention to the outcry. It'll catch your attention. It doesn't pass the smell test. Something else was going on.

And I believe that the evidence will also show that early or mid 2010, which the State is telling you about, Virgil had no more access to these children. None. Supervised visitation only, if he had it, was done through the CPS officers or through [A.H.'s aunt]. He had no access to this child. He had no access to any of the children.

The evidence will show you this. He didn't have the means. He didn't—he wasn't in contact. Something doesn't match. The road map goes askew. The time line goes askew.

. . . .

You're going to hear from Nick Canto. He's the interviewer from Scotty's House.

. . . .

Listen to the way his questions are asked. He follows a pattern. That pattern is a pattern that's recognized for child interviewers. And then listen—watch [A.H.'s] response. The first two videos she's going to look like a normal child, appropriate for her age. When that third video comes, everything is different. Something doesn't match. There's inconsistencies. Some of them are small. Some of them are huge.

But when you follow this road map and you listen to the evidence carefully, pay close attention to what happens to [A.H.]. Something else is going on in that 13 or 14 months between Interview No. 2 and Interview No. 3. The evidence is going to show you. You're going to watch the video. Something doesn't make any sense.

Now, the State would have you believe that she has an outcry, that she's finally come to the point that she's going to tell somebody. She didn't tell anybody the first time. She didn't tell anybody the second time. Thirteen months with her aunt and uncle in the middle of a custody battle. There it is.

Defense counsel's opening statement suggests that A.H. changed her story during the thirteen months between the second and third interviews with Canto.[3] According to defense counsel, this time frame coincides with the time A.H. lived with her aunt and uncle, both of whom were locked in a custody battle with appellant over Jeremiah. Implicit in defense counsel's opening statement is that A.H. fabricated her outcry. And as such, we believe that appellant opened the door to the admission of extraneous-offense evidence to rebut his defensive theory of fabrication.

Our conclusion is further supported by other portions of the record evidence. In his cross-examination of several witnesses, defense counsel repeatedly asked witnesses about the custody battle between appellant and A.H.'s aunt and uncle and A.H.'s truthfulness. Moreover, to further support our conclusion, we note that defense counsel emphasized the following during his closing argument:

> There's two whos [sic] in this one, and one of them is obviously [A.H.]. And [A.H.], what can you say about that seven-year-old child right there? What can you do to make that child feel better? Can you believe her? Is that going to make her feel better? Can you convict that man? Is that going to make her feel better?

> [A.H.] sat right here where I'm standing, and she told you that Virgil touched her down there in her crotch area, in her genital area. Can you believe that in this instance? Why can you believe? Why can you not believe it?

---

[3] We note that, although a defensive opening statement is not itself evidence, it does inform the jury of "the nature of the defenses relied upon and the facts expected to be proved in their support." *Bass v. State*, 270 S.W.3d 557, 563 n.7 (Tex. Crim. App. 2008) (citing TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(5) (West 2007); *Norton v. State*, 564 S.W.2d 714, 717-18 (Tex. Crim. App. 1978)). "When, as here, the defense chooses to make its opening statement immediately after the State's opening statement, the State may reasonably rely on this defensive opening statement as to what evidence the defense intends to present and rebut this anticipated defensive evidence during its case-in-chief" instead of "waiting until rebuttal." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 36.01(b)).

. . . .

Children are susceptible to having answers to questions suggested to them. I invite you—you will have the ability to take 1, 2[,] and 3 back there with you. And I invite you—I implore you to watch all of 1, 2[,] and 3 and watch the child's reactions and ask yourself what is authentic? What is authentic? What can I believe beyond a reasonable doubt?

. . . .

The child's reputation for truthfulness? She's a seven-year-old, okay. That's what her aunt . . . had to say. The child, by her adopted mother's testimony, would pinch herself. She will bruise herself, and she will threaten to call CPS. She will threaten to blame somebody else for an action that person did not do to her. Put that in the context of Exhibit 1, State's Exhibit 1.

When you think about State's Exhibit 1, you think about the proximity to the event. You think about the opportunity for suggestibility.

. . . .

You don't know, but you know a kid can be contaminated. Their memory can be contaminated. Their motives can be contaminated. Why? Why are these motives contaminated? Why did that little child lie at some point? Because you know what? She did. Because as much as it hurts to sit there and say that that sweet little precious child lied, she lied, all right? You've got the evidence of that. This isn't anyone's hearsay. This isn't anything right here. It's on 1, 2[,] and 3. She'll lie about what that man did or didn't do to her.

. . . .

When you start breaking these things down and you start breaking down the evidence and you start trying to apply the investigation that happened, the only thing that you're really left with is the words of a child; a child who has shown her ability to manipulate, a child who has been removed from a hotel from her—from her mother and stepfather; a child who has been taken home and has been given a new life, a better life. That's not an issue for us to decide. But I'll submit to you that it is.

She likes that life. She's comfortable. She's secure. Nobody's touching her there.

. . . .

And what happened in the intervening time? Well, all those counselors were involved. And guess what? There's a divorce that's filed. And guess what? [A.H.] knows that her name is going to change. And guess what? These kids are very close together, and they are very protective of each other.

. . . .

Evidence of a child who contradicts herself, evidence of an ongoing custody issue, evidence of a horrible, horrible situation that you cannot fix on this evidence. You can't fix it. That's the reality of this situation. And you have to—you have a duty at this point to work against your gut because your gut's probably telling you to believe the kid, believe the kid, believe the kid, believe the kid. You can't.

Based on the foregoing, we conclude that appellant opened the door to the admission of extraneous-offense evidence to rebut the defensive theory of fabrication. *See Williams*, 301 S.W.3d at 687; *Dennis*, 178 S.W.3d at 180; *see also Galvez*, 2009 Tex. App. LEXIS 6300, at *7 ("Galvez opened the door to admission of the extraneous-offense evidence to rebut the defensive theory of fabrication. He essentially argued that L.H. fabricated the story out of anger and revenge because of a dispute over money and/or because Galvez assaulted her. It is at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the non[-]character-conformity purpose of rebutting [Galvez's] defensive theory that the complainant fabricated her allegations against him and made this defensive theory less probable." (internal quotations & citations omitted)). Accordingly, we cannot say that the trial court abused

its discretion in admitting the complained-of testimony.  *See De La Paz*, 279 S.W.3d at 343; *see also Prible*, 175 S.W.3d at 731.  We overrule appellant's issues on appeal.

### III. CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed September 26, 2013
Do not publish
[CRPM]