# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00354-CR

---

**Brian Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-22-4143-A, THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

In six issues, appellant Brian Martinez challenges his convictions for first-degree continuous sexual abuse of a child (count I), second-degree indecency with a child by sexual contact (count II), and third-degree indecency with a child by exposure (count III). *See* Tex. Penal Code §§ 21.02(b), .11(a)(1). The victim of all three offenses is Martinez's girlfriend's child, Amber,[1] who was eleven and twelve years old at the time of the offenses. In his first four issues, Martinez contends that the trial court erred when it overruled his Rule 403 objections to the admission of extraneous offense evidence. In his last two issues, he contends that the judgments of conviction for counts II and III contain clerical errors. We modify and affirm the trial court's judgments of conviction as modified.

---

[1] Because the victims in this case and of the extraneous offenses are minors or were minors at the time of the offenses, we will refer to them and their family members by pseudonyms to protect their privacy. *See* Tex. R. App. P. 9.10(a)(3).

# BACKGROUND

Amber, who was in the eighth grade—about fourteen years old—at the time of the trial, testified that she, her two younger siblings, and her mother (Mother) moved in with Martinez when she was eleven years old, which was the summer of 2021. Martinez lived in a three-bedroom trailer with his grandparents. Amber testified that a couple of months after she moved there, Martinez started doing things that made her uncomfortable. He told Mother that Amber "had to dress more like a girl." Martinez bought new clothes for Amber and told her to wear them. The new clothes were "dresses, skirts, shorts, and crop tops." She did not like the clothes because they revealed her stomach, thighs, and legs and she did not want to show those parts of her body. Mother refused to intervene after Amber told her that she was uncomfortable in the clothes.

Amber testified that around this same time Martinez started coming into her room at night while she was sleeping to touch and grab her "breasts" over her clothes. A couple of months after the abuse started, Martinez "move[d] [her] clothes to the side" and touched and rubbed Amber's "vagina" in addition to touching her breasts. He touched her vagina on three occasions. He touched her breasts two to three times a week until Fall 2021 when Mother and Martinez temporarily broke up and Amber lived with Mother's friend for about four months. Amber testified that she told her mother's friend about the abuse, and the friend told Mother. Amber testified that Mother accused her of lying and when Amber tried to tell her that it happened, Mother physically abused Amber.

Mother's friend testified that while living with her, Amber wore t-shirts and jeans, but when she lived with Mother and Martinez, Amber was dressing "like an adult" and wearing "tight clothes." She testified that Amber made an outcry of sexual abuse against Martinez. When she told Mother about it, Mother moved Amber back in with her. The friend testified that when

2

Amber was told that she had to go live with Mother and Martinez again, Amber engaged in self-harm.

Amber testified that when she moved back in with Mother and Martinez, he started touching her breasts at night again. One time, Amber woke up to Martinez masturbating in front of her. He told her not to tell anyone about any of the abusive conduct. Martinez stopped sexually abusing Amber around March of 2022, about two months before Amber moved in with her father and stepmother (Stepmother).

Amber testified that while living with her father, Amber told her stepmother about the abuse. Amber was not ready to speak to the police yet. A few months later, Mother and Martinez came to pick up Amber and her siblings to go live with them again. Mother was screaming and banging on the door. Amber said that she was not going back and that her younger siblings needed to stay with her. Her stepmother called the police. Stepmother explained to Amber that her options were to either go with Mother or tell the officer what had happened to her. Amber told the officer what Martinez had been doing to her at night.

Stepmother testified that Amber told her about the abuse. Stepmother testified that she reported Amber's outcry to an investigator with Child Protective Services (CPS) right away, but that she was told that nothing could happen at that time because there was no police report.

Deputy Linda Garza testified about answering a call about a verbal dispute over child custody at Stepmother's house. She testified that Amber made an outcry to her. The case was then transferred to another county's law enforcement department based on where the reported crime had occurred. Detective Chase Crow testified that he was assigned to investigate Amber's allegations against Martinez.

3

John Guerra testified that he is an investigator with CPS. He was involved in CPS investigations involving Amber's family during 2021 and 2022. As part of those investigations, he interviewed Amber in January and May 2022. Guerra testified that Amber never made an outcry to him. He testified that the only people that Amber outcried to were women.

The State presented extraneous-offense evidence of sexually abusive conduct committed against three other child victims over defense counsel's Rule 403 objections.

Outside the presence of the jury, the State presented the testimony of Martinez's cousin, Aaron. Aaron, who was twenty-eight years old when he testified at trial, testified that when he was seven or eight-years-old, Martinez sexually abused both him and his brother Charlie—who is older than him by one year. Aaron did not know how old Martinez was, but knew Martinez was older than him. Based on juvenile adjudication paperwork, Martinez was twelve years old at the time. Aaron testified that Martinez penetrated his anus and mouth with his penis at least ten times. This happened both at Martinez's parents' house and Aaron's house. Aaron also witnessed Martinez penetrate Charlie's anus at least five times. Aaron testified that these incidents happened at night during family parties. The trial court admitted, for purposes of the hearing, the juvenile adjudication paperwork for the offense of aggravated sexual assault committed against Aaron.

Still outside the presence of the jury, the State called Sandy, who was twenty-one years old when she testified. Sandy testified that when she was about five years old, her mother started dating Leroy Martinez, who is Martinez's cousin. Sandy testified that Leroy and Martinez's grandmother would babysit her sometimes at night when her mom and Leroy would go out. Martinez lived with his grandmother. In 2011, when she was eight years old, she was asleep on the couch at the grandmother's house when Martinez woke her up, put her between his legs, and rubbed her against him. He asked her if she had ever seen her mom and dad do what he was doing

4

to her. She said, "No," and started crying. He told her not to tell anyone what had happened or they would get in trouble. She did not tell anyone until she told her mom in 2017. It was reported to police about a year later, and she gave a forensic interview.

The State argued to the trial court that the extraneous offense evidence was admissible under Article 38.37 of the Texas Code of Criminal Procedure. Defense counsel objected under Rule 403 of the Texas Rules of Evidence. The trial court overruled defense counsel's objections. Aaron and Sandy testified in front of the jury substantially similarly as they did during the hearing. Defense counsel renewed his objections prior to Aaron and Sandy testifying, and the trial court overruled them.

After the testimony of Aaron and Sandy in front of the jury, the State moved to admit State's Exhibit 9, which is the juvenile adjudication paperwork reflecting that Martinez pleaded true in 2004—at age twelve—to an aggravated sexual assault of Aaron that was committed in September 2003. It also reflected that because of his plea, an additional count naming Charlie as the victim was dismissed. Defense counsel objected to the admission of this exhibit on Rule 403 grounds. The trial court overruled the objection and admitted the exhibit.

Casey Crosby testified that she was the forensic interviewer that spoke with Amber at a children's advocacy center after Amber outcried to the police officer. She testified that Amber stated that Martinez touched her breasts and her vagina multiple times a week and also masturbated in front of her.

After hearing all the evidence, the jury found Martinez guilty of all three offenses. The jury found the two enhancement paragraphs true—which alleged that Martinez had been previously convicted in 2018 of aggravated assault with a deadly weapon and assault with family violence as a repeat offender—and assessed punishment at life imprisonment for counts I and II

5

and twenty years' imprisonment for count III.  *See* Tex. Penal Code §§ 12.32, .33, .42, 21.02(h), .11(d).  Martinez appeals.

## RULE 403

### *Standard of Review*

At the trial of a defendant accused of, among other things, continuous sexual abuse of a young child and indecency with a child, evidence that the defendant committed a separate sex offense against another child may be admissible under Article 38.37 "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."  *See* Tex. Code Crim. Proc. art. 38.37, § 2; *see also Dies v. State*, 649 S.W.3d 273, 284 (Tex. App.—Dallas 2022, pet. ref'd).  "When evidence of a defendant's extraneous acts is relevant under article 38.37, the trial court is still required to conduct a Rule 403 balancing test upon a proper objection or request."  *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd).

We review a trial court's ruling regarding the admission or exclusion of extraneous offense evidence for an abuse of discretion.  *See Irsan v. State*, 708 S.W.3d 584, 616 (Tex. Crim. App. 2025).  Under that standard, a trial court's ruling will be deemed an abuse of discretion only if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).  Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case."  *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).  In addition, an appellate court reviews the trial court's ruling in light of the record before the court

6

"at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted).

"Probative value" means more than relevance; it "refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "Unfair prejudice" refers to a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*; *see Inthalangsy v. State*, 634 S.W.3d 749, 758 (Tex. Crim. App. 2021). In conducting a Rule 403 analysis, the trial court must balance the claimed probative force of the proffered evidence along with the proponent's need for the evidence against:

> (1) any tendency of the evidence to suggest that the case would be decided on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016) (citing *Gigliobianco*, 210 S.W.3d at 641–42). These factors may blend together in practice. *Gigliobianco*, 210 S.W.3d at 642. The trial court's balancing test need not be performed on the record. *See Hitt,* 53 S.W.3d at 706. Reviewing courts should afford trial courts a high level of deference regarding admissibility determinations under Rule 403. *See Brickley v. State*, 623 S.W.3d 68, 79–80 (Tex. App.—Austin 2021, pet. ref'd).

### Discussion

*Aaron's testimony and State's Exhibit 9*

In his first through third issues, Martinez contends that the trial court erred when it admitted evidence of extraneous offenses committed against his cousins when he was twelve years old. For the reasons detailed below, we conclude that the admission of this extraneous evidence was error but that the error was harmless.

As discussed above, Aaron testified that when he was about seven-years-old and his brother was about eight-years-old, Martinez penetrated their anuses and his mouth with Martinez's penis on multiple occasions, and a juvenile adjudication for the offense of aggravated sexual assault committed against Aaron was admitted as State's Exhibit 9. Defense counsel argued that these acts should be excluded under Rule 403 because they were too different and remote from the charged offenses to be probative, Martinez was a juvenile at the time they allegedly occurred,

8

they were acts of "sexual perversion," they would confuse the jury, and they would encourage a verdict on an improper basis. Defense counsel argued that State's Exhibit 9 should be excluded under Rule 403 because the aggravated sexual assault offense described in that case was more egregious than the charged offenses, would confuse the jury, would result in a conviction on this basis alone, and was cumulative to Aaron's testimony. The prosecutor argued that the evidence of Martinez's extraneous offenses committed against the cousins should be admitted because this was a "he said/she said" case without any forensic evidence, the remoteness of the juvenile offenses were mitigated by the intervening offense committed against Sandy, the State did not plan to spend an extraordinary amount of time developing Aaron's testimony or presenting the exhibit, and that the testimony would not confuse the jury because they would be provided with instructions.

Balancing test

"[E]vidence of a separate sexual offense against a child admitted under Article 38.37, Section 2(b) is probative of a defendant's character or propensity to commit sexual assaults on children." *Deggs v. State*, 646 S.W.3d 916, 925 (Tex. App.—Waco 2022, pet. ref'd). On appeal, Martinez contends that the probative value of this extraneous offense evidence is weakened by the remoteness and dissimilarity of the offenses committed against the cousins compared to the charged offenses. "[R]emoteness can significantly lessen the probative value of extraneous-offense evidence . . . because logically, the passage of time allows things and people to change." *See Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd). However, "remoteness alone is not sufficient to render an extraneous offense excludable under Rule 403," and other factors can bolster the probative value, such as remarkable similarities between the extraneous and charged offenses. *Id.* at 226–27 (explaining that probative force of "extremely

9

remote event" from over twenty years prior was "significantly bolstered" by extraneous offenses being "remarkably similar" to charged offense and resulting in factor only "somewhat favor[ing] exclusion"). Here, the extraneous offenses against the cousins occurred about eighteen years prior to the charged offenses and eight years prior to the intervening extraneous offense against Sandy. *See Curtis v. State*, 89 S.W.3d 163, 174 (Tex. App.—Fort Worth 2002, pet. ref'd) (acknowledging that intervening misconduct may "narrow the gap" between remote offenses). Although the extraneous and charged offenses share some similarities, they are not "remarkably similar." Because of the remoteness, lack of "remarkable similarities," and existence of only a singular and not "remarkably similar" bad act to "narrow the gap," we conclude that this factor favors exclusion.

In deciding whether the evidence was needed by the State, we consider whether the proponent had other evidence to establish the fact of consequence, how strong the other evidence was, and whether the "fact of consequence related to an issue that is in dispute." *See Erazo v. State*, 144 S.W.3d 487, 495–96 (Tex. Crim. App. 2004). Here, the State's need for the evidence was to rebut the defensive theory of fabrication—that Amber had made up the allegations against Martinez so that she could continue living with her father instead of her physically abusive mother. *See Price v. State*, 594 S.W.3d 674, 681 (Tex. App.—Texarkana 2019, no pet.) (concluding that "[b]ecause there was no biological evidence and there were no third-party eyewitness to the alleged incidents, and because [defendant] challenged [victim's] credibility and memory, the State had a considerable need for the evidence."). Additionally, there were no corroborating eyewitnesses or physical or biological evidence of Martinez's abuse of Amber. *See Hammer*, 296 S.W.3d at 568 (explaining that "Rule 403 . . . should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant"); *Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet.

ref'd) (determining that State's need for evidence "weighs strongly in favor of admission" because without evidence, State's case would have amounted to the complainant's word against defendant's). We conclude this factor weighs in favor of admission.

The extraneous offense evidence of the assaults allegedly committed against the cousins may have tended to suggest a decision on an improper basis. *See Gigliobianco*, 210 S.W.3d at 641 (stating that evidence might encourage decision on improper basis if it arouses jury's sympathy or hostility "without regard to the logical probative force of the evidence"); *Love v. State*, 706 S.W.3d 584, 616 (Tex. App.—Austin 2024, pet. ref'd) (acknowledging inflammatory nature of sexually-related bad acts and misconduct involving children). The extraneous offenses, which involved penetrative intercourse, were more egregious than the charged offenses and included the additional stigma of being incestual acts. *Cf. Robisheaux*, 483 S.W.3d at 220 (noting that "inherently inflammatory" nature of extraneous sexual offenses committed against children may be "ameliorated somewhat" when the extraneous allegations are "no more serious than the allegations forming the basis for the indictment"); *Dies*, 649 S.W.3d at 286 (same). We conclude that this factor weighs in favor of exclusion.

The next factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *See Gigliobianco*, 210 S.W.3d at 641. Martinez concedes that no specialized knowledge was required for the jury to understand the probative value of this evidence and states that this factor does not weigh in his favor. We agree.

Martinez contends that the jury could have been confused and convicted on the extraneous offenses alone instead of the charged offense. This factor addresses the evidence's

11

"tendency to confuse or distract the jury from the main issues in the case." *See id.* As addressed above, the extraneous offense testimony contained inflammatory topics that were not present in the charged offenses—including oral and anal penetration and incest. Further, we note that Aaron's testimony did not include testimony that Martinez was also a young child at the time—twelve years old. Although, State's Exhibit 9 included Martinez's age at the time of the aggravated sexual assault offense he pleaded true to. We conclude that this factor weighs in favor of exclusion.

Regarding the time-consuming or repetitive nature of the evidence, Martinez states that the State was efficient in its development of this evidence and states that it does not weigh in his favor. We agree. This factor concerns "whether the jury was distracted from the charged offense." *Love*, 706 S.W.3d at 616. In calculating the time needed to develop the extraneous-offense evidence, we exclude jury argument and hearings held outside the jury's presence, *see Dennis v. State*, 178 S.W.3d 172, 181 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), and include "any testimony introduced regarding the evidence, including cross-examination, redirect examination, and any rebuttal offered by the defense in response to the evidence," *Hart v. State*, 688 S.W.3d 883, 893 (Tex. Crim. App. 2024). Here, all the evidence was presented in one day and covers about 174 pages of transcript. The extraneous offense evidence regarding the cousins covered about eleven pages—roughly six percent. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (concluding this factor weighed in favor of admission where extraneous-offense testimony amounted to "less than one-fifth" of trial testimony); *Love*, 706 S.W.3d at 616 (noting that "[t]he precise ratio is less important than determining whether the jury was distracted from the charged offense").

In summary, the inherent probative value was significantly diminished by the remoteness of the offenses and by the fact that the extraneous and charged offenses did not share

12

remarkable similarities that effectively mitigated the remoteness's effect in this case. Although the State had a strong need for the extraneous offense evidence, that need combined by the diminished probative value of the evidence was substantially outweighed by the prejudicial nature of the offenses that were likely viewed as more egregious than the charged offenses by the jury. After balancing the Rule 403 factors, we conclude that the trial court could not have reasonably concluded that the probative value of the extraneous offense evidence regarding Martinez's sexual abuse of his two young cousins when he was twelve years old was not substantially outweighed by the danger of unfair prejudice. We conclude that the trial court erred in admitting this evidence and conduct a harm analysis. *See Pawlak*, 420 S.W.3d at 811 (remanding case to appellate court for harm analysis after concluding extraneous offense evidence was erroneously admitted over Rule 403 objection).

Harm analysis

We review the erroneous admission of extraneous offense evidence under Texas Rule of Appellate Procedure 44.2(b), which provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." *See Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). An error affects a substantial right "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An appellate court "will not overturn a criminal conviction for non-constitutional error if [it], after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). When conducting our review, we "should consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the

13

verdict, and the character of the error and its relationship to other evidence." *Id.* Additionally, we "may consider the trial court's instructions to the jury, the theories of the case that the State and defendant have espoused, arguments to the jury and relevant voir dire." *Id.* at 444–45. Whether the State emphasized the error is also a factor. *See Motilla*, 78 S.W.3d at 356.

In considering the character of the error and its relationship to other evidence, courts consider whether the erroneously admitted evidence was so "emotionally charged" as to prevent the jury from rationally considering the evidence before it. *Compare id.* at 359 (concluding that brief testimony by mother of murder victim about caring for him when he was sick baby and adopting him soon after "was not so 'emotionally charged' as to prevent the jury from rationally considering the evidence before it" in part because it "bore no relationship to the sole contested issue in the case"), *with Reese v. State*, 33 S.W.3d 238, 244 (Tex. Crim. App. 2000) (concluding that erroneously admitted photo of victim's fetus that had been removed from her body after her death was not harmless error when "this emotionally charged photograph [was] the only photograph that the State offered during the punishment phase"). As noted above, the extraneous offense evidence was highly inflammatory and directly related to the contested issue before the jury—whether Martinez sexually abused Amber.

However, this was not the only Article 38.37 evidence that the jury heard regarding Martinez's history as and propensity for being a sex offender. Sandy also testified that Martinez had abused her when she was eight-years-old, and as discussed below, her testimony was properly admitted. *See King*, 953 S.W.2d at 273 (acknowledging that potential harm of erroneously admitted evidence may be "defused by properly admitted evidence").

Additionally, Amber testified that Martinez committed the charged offenses against her, and four witnesses—her stepmother, her mother's friend, Deputy Garza, and the forensic

14

interviewer all testified that Amber outcried to them regarding the same offenses that Martinez was charged with committing. *See Motilla*, 78 S.W.3d at 359 (concluding erroneously admitted evidence was harmless error when evidence of defendant's intent to murder victim "was substantial").

References to this evidence during closing arguments were brief. The State did not initially bring up Aaron's testimony or the juvenile adjudication during its closing. The State briefly referenced this evidence in its rebuttal as a response to defense counsel telling the jury to disregard the extraneous offenses as "muddying the waters." *See Sanders v. State*, 255 S.W.3d 754, 762 (Tex. App.—Fort Worth 2008, pet. ref'd) (noting that "the State did not mention the incident at all in its opening statement and mentioned it only briefly in closing arguments" and concluding that error was harmless).

Considering the concise nature of the development of the evidence, the existence of other properly admitted extraneous offense evidence, the fact that Amber consistently and repeatedly outcried to four witnesses who all testified in addition to her testifying about the charged offense, the State's focus on the charged offense in its closing arguments, and the minimal reference to this evidence in both parties' closings, we conclude that the erroneous admission of Aaron's testimony and the juvenile adjudication was harmless error. *See id.* (concluding that based on "the brief presentation" of erroneously admitted extraneous offense evidence, it did not substantially sway or influence the jury's verdict and was harmless error).

We overrule Martinez's first through third issues.

<u>Sandy's Testimony</u>

In his fourth issue on appeal, Martinez contends that the trial court erred when it admitted Sandy's extraneous offense testimony. As described above, Sandy testified that her mother dated Martinez's cousin and that when she was eight years old—about ten years before Martinez abused Amber—Martinez grabbed her, pulled her onto his lap, and rubbed her butt against him. At trial, Martinez's counsel objected to the admission of this testimony under Rule 403. The prosecutor argued that her testimony should be admitted because the State did not plan to spend an extraordinary amount of time developing it, that her testimony would not confuse the jury because they would be provided with instructions, that the testimony was probative because this was a "he said/she said" case without any forensic evidence, and that ten years was not too remote.

<u>Balancing test</u>

Because evidence of prior sexual abuse of children is "'especially probative of [a defendant's] propensity to sexually assault children,' the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.)). Martinez contends that the probative value of this extraneous offense evidence is weakened by the remoteness and dissimilarity of the offense committed against Sandy compared to the charged offenses. As discussed above, "remoteness can significantly lessen the probative value of extraneous-offense evidence . . . because logically, the passage of time allows things and people to change." *See Gaytan*, 331 S.W.3d at 226. However, "remoteness alone is not sufficient to render an extraneous

16

offense excludable under Rule 403," and other factors can bolster the probative value, such as remarkable similarities between the extraneous and charged offenses. *Id.* at 226–27 (explaining that probative force of "extremely remote event" from over twenty years prior was "significantly bolstered" by extraneous offenses being "remarkably similar" to charged offense and resulting in factor only "somewhat favor[ing] exclusion"). Here, the extraneous offense against Sandy occurred about ten years prior to the charged offenses. The extraneous and charged offenses shared many similarities. *See Castaneda v. State*, 694 S.W.3d. 13, 24 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (concluding that "[t]estimony that appellant sexually assaulted two other children in a similar manner and at a similar age was highly probative to rebut appellant's defense that Complainant fabricated her allegations"). Amber was eleven-years-old and Sandy was eight. Martinez was an adult at the time of both the extraneous and charged offenses. Amber is the daughter of Martinez's girlfriend and Sandy's mother was dating Martinez's cousin. Both girls were left at Martinez and his grandmother's trailer overnight while their mothers were out and were awoken by Martinez either shortly before or during the inappropriate touching. Both the extraneous and the charged offenses involved indecent touching and rubbing—although of different body parts. Weighing the inherent probative value, the ten-year gap between the extraneous and charged offenses, and the similarities between the offenses, we conclude that the first factor weighs in favor of admission. *See Gaytan*, 331 S.W.3d 226–27.

The State's need for Sandy's extraneous offense testimony evidence was to rebut the defensive theory of fabrication and because the case lacked corroborating eyewitnesses or physical or biological evidence of Martinez's abuse of Amber. *See Price*, 594 S.W.3d at 681; *Hammer*, 296 S.W.3d at 568. This factor therefore weighs strongly in favor of admission. *See Robisheaux*, 483 S.W.3d at 220.

17

"[A]lthough sexually-related bad acts and misconduct involving children are inherently inflammatory, the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Love v. State*, 706 S.W.3d 584, 616 (Tex. App.—Austin 2024, pet. ref'd). Further, the sole extraneous offense that Sandy testified to—Martinez rubbing her butt on his lap—was not more egregious than the charged offenses which occurred multiple times a week over an extended period. *See Robisheaux*, 483 S.W.3d at 220 (noting that "inherently inflammatory" nature of extraneous sexual offenses committed against children may be "ameliorated somewhat" when the extraneous allegations are "no more serious than the allegations forming the basis for the indictment"); *Dies*, 649 S.W.3d at 286 (same). We conclude that this factor weighs, at most, neutrally.

Regarding the tendency to confuse or distract the jury from the main issues in the case, *see Gigliobianco*, 210 S.W.3d at 641, Martinez contends that Sandy's testimony "was so inflammatory" that the jury could have been confused and convicted on the extraneous offenses alone instead of the charged offense. As addressed above, Sandy's testimony was similar and less egregious than the charged offenses. We conclude that this factor does not support exclusion.

Martinez concedes that no specialized knowledge was required for the jury to understand the probative value of this evidence and that it did not have a tendency to be given undue weight by the jury on other than emotional grounds. *See id.* We agree.

Regarding the time-consuming or repetitive nature of the evidence, Martinez states that the State was efficient in its development of this evidence and that it does not weigh in his favor. We agree. The State told the trial court that the extraneous offense witnesses would not take up an extraordinary amount of time, and Sandy's testimony covered about six pages of the total 174 pages of relevant transcript—roughly three percent. *See Lane*, 933 S.W.2d at 520 (concluding this

18

factor weighed in favor of admission where extraneous-offense testimony amounted to "less than one-fifth" of trial testimony). There is no indication in the record that the jurors were distracted by it. *See Love*, 706 S.W.3d at 616 (noting that "[t]he precise ratio is less important than determining whether the jury was distracted from the charged offense").

In summary, none of the factors weigh in favor of exclusion of Sandy's testimony that Martinez rubbed her butt against his lap when she was eight years old. Under the applicable standard of review, we cannot conclude that the trial court abused its discretion by overruling his Rule 403 objection. *See* Tex. R. Evid. 403, *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (explaining that "the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children" when evidence of prior sexual abuse of children is especially probative of defendant's propensity to sexually assault children). We overrule Martinez's fourth issue.

## MODIFICATION OF THE JUDGMENTS

In his fifth and sixth issues on appeal, Martinez contends—and the State agrees—that the trial court's judgments for counts II and III contain an error and requests that we modify the judgments to correct the errors. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc) (explaining that "[a]ppellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record"). The judgments' "Statute for Offense" section recites "21.11(d) Penal Code" as the statute providing for the offense of indecency with a child. The "Statute for Offense" section of judgments should recite the statutory references that define the elements of the offense

19

that the defendant committed. *Jones v. State*, 691 S.W.3d 231, 246–47 (Tex. App.—Austin 2024, pet. ref'd). The elements of the indecency with a child by contact offense that appellant was convicted of in count II are contained within Texas Penal Code Section 21.11(a)(1). The elements of the indecency with a child by exposure offense that appellant was convicted of in count III are contained within Texas Penal Code Section 21.11(a)(2)(A). Thus, we modify the judgments to reflect that the "Statute for Offense" for count II is "21.11(a)(1) Penal Code" and the "Statute for Offense" for count III is "21.11(a)(2)(A) Penal Code."

## CONCLUSION

Having modified the judgments for counts II and III of cause number CR-22-4143-A to reflect that the "Statute for Offense" is "21.11(a)(1) Penal Code" for count II and "21.11(a)(2)(A) Penal Code" for count III, we affirm the trial court's judgments of conviction as modified. *See* Tex. R. App. Proc. 43.2(b).

_____

Gisela D. Triana, Justice

Before Justices Triana, Theofanis, and Crump

Modified and, as Modified, Affirmed

Filed: April 2, 2026

Do Not Publish